**Bruce C. SCOTT, Appellant,**

v.

**John W. MACY, Jr., Chairman, U. S. Civil Service Commission, et al., Appellees.**

**No. 20841.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 23, 1967.

Decided Sept. 11, 1968.

Mr. David Carliner, Washington, D. C., with whom Messrs. Jack Wasserman and Ralph Temple, Washington, D. C., were on the brief, for appellant.

Mr. Michael C. Farrar, Atty., Department of Justice, of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, with whom Acting Asst. Atty. Gen. Carl Eardley, Messrs. David G. Bress, U. S. Atty., and John C. Eldridge, Atty., Department of Justice, were on the brief, for appellees. Messrs. Richard S. Salzman and Alan S. Rosenthal, Attys., Department of Justice, also entered appearances for appellees.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant, an applicant for federal employment who has passed the competitive examinations, is before us for the second time in his effort to set aside a disqualification imposed upon him by the Civil Service Commission. In Scott v. Macy, 121 U.S.App.D.C. 205, 349 F.2d 182 (1965), we reviewed the Commission's debarment of appellant from all employment in the federal service "because of immoral conduct." [1] A majority of the court were of the view that this action

---

1. The Commission's Regulations, issued under the authority of 5 U.S.C. § 631 (1964), *as amended*, 5 U.S.C. § 3301 (Supp. II, 1967) and the Civil Service Rules promulgated by Exec.Order No. 10,577, 3 C.F.R. 218–25 (1954–1958 Comp.), 5 U.S.C. § 631 (1964), provide as follows:

    [T]he Commission may deny an applicant examination, deny an eligible

appointment, and instruct an agency to remove an appointee for any of the following reasons:

    *      *      *      *      *

    (b) Criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct;

5 C.F.R. § 731.201 (1968).

could not be sustained upon the record before us, and we directed that a judgment be entered which would have the effect of restoring appellant to the status of one eligible to be considered for federal employment, absent any further valid action by the Commission to accomplish his absolute disqualification. The Commission has purported to take such further action, but, for the reasons appearing hereinafter, we find it unavailing.

## I

Appellant's initial disqualification "because of immoral conduct" was founded upon a 1947 arrest for "loitering," a 1951 arrest "for investigation," and undisclosed "information indicating that you are a homosexual." Not long after our decision, appellant was confronted with a Civil Service Commission investigation report which set forth (1) the 1947 arrest, (2) the 1951 arrest, (3) statements alleged to have been made by appellant to a former supervisor when he was in state employment that he was a homosexual, that he had been "perverted" since youth, and that he lived with a "lover," and (4) that appellant had stood mute when a neighbor had characterized him as a homosexual. Upon the basis of these four matters, appellant was asked the question: "In view of the information which has been cited above, do you now deny that you have engaged in homosexual acts?"

Appellant made a detailed response in writing. He set forth at length the circumstances of the 1947 and 1951 arrests, denying any homosexual acts or purposes in connection therewith and pointing out that no prosecutions had resulted from these arrests. He denied that he had ever characterized himself to his former supervisor as "perverted" or as having had a "lover." He asserted that, in the case of the neighbor's characterization of him as a homosexual, he had felt no obligation under the circumstances to respond. In respect of the final question as to whether he now denied ever having engaged in homosexual acts, appellant challenged the Commission's right to ask it for various reasons, including invasion of a right to privacy, and a lack of relationship between the question and fitness to perform work.

Upon this investigation report and appellant's response to it, the Commission made a second determination of disqualification. The basic adjudication is in the form of a letter dated March 11, 1966, to appellant from the Chief of the Division of Adjudication, the critical portion of which is set forth in the margin.[2] Ap-

2. The Civil Service Act, section 1753 of the Revised Statutes (5 U.S.C. 631), and the Civil Service Rules and Regulations promulgated under these authorities govern the admission of persons into the civil service of the United States and require the Civil Service Commission to determine the fitness of each candidate in respect to character, among other things. These authorities also provide for appropriate investigation by the Commission and require an applicant, on request of the Commission, to furnish information in his possession necessary to enable the Commission to make a determination of his character and fitness. (5 CFR 5.3) Reasons which may disqualify an applicant from competing in examinations are listed in Part 731 of the Commission's regulations (5 CFR 731.201). Among the reasons upon which disqualification may be based are the following:

"(b) Criminal, infamous, dishonest, immoral or notoriously disgraceful conduct."

The results of investigation in your case have been carefully considered, as have your statements in the interview on April 27, 1962, and your letter of December 20, 1965. Consideration has also been given to your refusal to comment or to furnish information as to whether or not you have engaged in homosexual acts, and to your failure to deny the admissions made by you, as reported by Mr. Keyes, during the course of his conversation with you in 1960. These matters are pertinent to a determination of your fitness. Accordingly, in light of the investigation and your failure to respond to the question as to whether or not you have ever engaged in homosexual acts, as well as your failure to give a satisfactory explanation of the derogatory evidence adduced by the investigation, I

pellant appealed this ruling within the Commission. At the first intra-agency appellate level, a letter from the Director of the Bureau of Personnel Investigations advised that "[t]he derogatory information obtained during the investigation which was communicated to you for rebuttal, explanation, or clarification, has not been adequately resolved by any information furnished by you or your counsel so as to enable me to make a finding that you are suitable." Further appeals to the Commission's Board of Appeals and Review, and to the Commission itself, resulted in affirmances stated generally in terms of the apparent absence of grounds for overturning the decision of the Bureau of Personnel Investigations.

In the District Court appellant moved to enforce the mandate of the judgment resulting from our first decision, and asked for an order directing the Commission not to disqualify appellant "for immoral conduct." The Government filed an opposition to this motion (together with a cross-motion for affirmance) which stated that the Commission had made a new determination that "it cannot conclude that [appellant] meets the prescribed suitability and fitness standards" for the federal service, and that this determination was not in conflict with the earlier mandate. It attached certain exhibits to this opposition, one of which it characterized as the "CSC

statement of February 25, 1966 in respect of the unsuitability or unfitness for Government employment of persons who have engaged in homosexual acts." [3] By agreement at the hearing of the motion and cross-motion, appellant orally amended his original complaint by adding a second cause of action directed against the Commission's renewed determination of disqualification, and both parties orally moved for summary judgment with respect to it.

The District Court denied appellant's motion to enforce the mandate, and granted appellees' motion for summary judgment. In announcing its decision, the District Court first stated that "this Court holds that the Government has a right to consider a person who actively engages in homosexuality as unfit for Federal employment." It went on to hold, further, that "the replies of [appellant] to the first four of the items * * * plus the fact that [appellant] simply refused to answer outright [the last question], justified the Government in finding that [appellant] was not fit for employment by the Government." [4]

## II

In this court appellant urged that he had for a second time been disqualified "because of immoral conduct," and that the Commission's action in this respect continued to be defective. The Government, however, insisted that this was a

am unable to conclude that you meet the standards of fitness for employment in the competitive federal service. Therefore, the applications under consideration for employment are rated ineligible.

3. This exhibit consists of a letter, dated February 25, 1966, from the Commission to an organization known as The Mattachine Society of Washington. The letter refers to a meeting between representatives of the Commission and the Society for the purpose of enabling the latter to present its views on the relationship of homosexuality to suitability for federal employment, and to the submission of documentary materials by the Society in support of its representations.

4. After the court had ruled, this colloquy occurred in response to the court's in-

quiry as to whether Government counsel had anything further to suggest:

MR. ZIMMERMAN: Yes, Your Honor. I merely wish to point out that when Your Honor stated that the Civil Service Commission found him unfit, that this is not what they did, they found that they could not find that he was fit.

Your Honor may feel this is a distinction without importance, but at least for the record I should like to have it reflect that is the particular finding they made.

THE COURT: That is correct, and we may amend that to say I think they were justified in saying they could not find that he was fit.

misconception of the Commission's action, and that what had actually happened the second time around was that appellant had been disqualified solely under those provisions of the rules and regulations addressed to the refusal to give testimony.[5] In defending the Commission's action, the Government disclaimed any reliance whatsoever upon the authority to disqualify "because of immoral conduct," and insisted that the Commission must be judged solely by reference to the basis for its second determination and not to that which underlay its first.

This latter formulation reflects a correct principle of administrative review, and we agree with it.[6] There is, of course, another accepted principle in this field to the effect that an agency's action must be judicially sustained upon the reason for which it acts, and not by reference to one upon which it might have acted.[7] And we are unable to say that the Commission acted for the reason assigned by Government counsel on this appeal. The key document is the letter to appellant of March 11, 1966, from the Chief of the Division of Adjudication, the critical language of which appears *supra* note 2. We note that the only ground of disqualification therein expressly cited and quoted is subparagraph (b) of 5 C.F.R. § 731.021—the "immoral conduct" ground which was the sole basis of appellant's earlier disqualification. There is no reference to subparagraph (d) of that same regulation (*supra* note 5), which provides an independent and alternative ground of disqualification for refusal to furnish testimony, and which is the ground the Government now argues was the *sole* ground upon which the Commission acted.

The language of the letter is needlessly imprecise, certainly by contrast with the ease with which it could have been made crystal clear that, without reference to the "immoral conduct" ground of subparagraph (b), appellant was being disqualified under the explicit authority of subparagraph (d), not because he was believed to have been guilty of "immoral conduct" but because he would not supply information. The letter does refer to appellant's refusal to answer the final question but, in the context, we are quite

5. Section 5.3 of the Civil Service Rules provides that applicants or eligibles for federal employment "shall give to the Commission * * * all information and testimony in regard to matters inquired of arising under the laws, rules, and regulations administered by the Commission." 5 C.F.R. § 5.3 (1968).

The Commission's Regulations, in subparagraph (d) of 5 C.F.R. § 731.201 (see note 1, *supra*) give as an independent ground of disqualification:

(d) Refusal to furnish testimony as required by § 5.3 of this chapter.

6. We have before now invited attention to the fact that, although the appeal before us is from an independent action in the District Court, in most instances, as here, disposition in that court is on the basis of the administrative record and should be governed by the principles generally applicable to the judicial review of administrative action. *See* Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965). Why there should be a double review of this character—once in the District Court and once here— is a highly pertinent question, particularly in these days of over-crowded dockets in all courts. To the extent the Commission aspires to the status of an independent agency comparable to those whose decisions are reviewed directly by the federal courts of appeals, it would seem in the interest of both it and the federal judicial system to bring this matter to the attention of the Congress.

7. As the colloquy in note 4, *supra*, indicates, Government counsel, upon whom devolved after the fact the mission of defending the Commission, was alert to the significance of these principles and, as a good lawyer should, got on record in the District Court the terms in which he preferred to characterize the ground of the Commission's action. Even those terms do not, however, meet squarely the ambiguity inherent in saying in substance, as did the Bureau of Personnel Investigations, that, because of the derogatory information *and also* a failure to deny it, fitness cannot be found. This is certainly subject to the possible construction that, the derogatory information being undenied, it is taken to be true and to show "immoral conduct."

unable to say with the requisite assurance that this was the exclusive foundation of Appellant's disqualification. It seems to us just as likely, if not more so, that the Bureau of Investigations determined that its enlarged investigation report warranted a renewal of the earlier finding that appellant should be disqualified "because of immoral conduct." How else can there be a meaningful explanation of the inclusion of subparagraph (b) and the exclusion of subparagraph (d) in a formal adjudication even though we are now told by counsel after the fact that only the omitted ground was the motivation of the decision?

The Government insists that we measure the Commission's action solely by reference to the uncited subparagraph (d). We are unable to conclude, however, that the Commission's decision did not in fact rest upon a finding of "immoral conduct." Therefore, the current disqualification cannot stand.[8] Where individual rights of substance turn upon whether the Commission acted for one reason rather than another, we think it not too much to expect that the Commission will not leave its motivations clouded by inexactitude of expression. Civil service investigators are doubtless not unlike the rest of us in being slow to relinquish a conviction of the correctness of an action once taken for the reason it was taken. If a wholly new and different reason is to become the mainspring of the action, that should be made clearly to appear—and the resources of language are fully up to this task. Thus, this appeal must terminate as did the former one, i. e., the grant of summary judgment is reversed, and a judgment should be entered "which has the effect of restoring appellant to his original status, that is to say, one who has met the competitive examination requirements for certain grade levels and who, absent any further action by the Civil Service Commission to disqualify him, is eligible to be considered for employment by the employing agencies."[9]

In reaching this result on the record before us, we decide nothing with respect to the scope of the Commission's authority to disqualify under subparagraph (d), as distinct from subparagraph (b). One seeking employment with the federal government may well be placed under greater obligation to communicate information about himself than one who is not. But it may also be true that federal applicants for employment do not, wholly apart from Fifth Amendment concerns, forfeit all rights of privacy accorded to persons generally by the First Amendment, and that the reasonableness of requiring answers to certain questions may be greatly affected by the clarity and rationality of the policies sought to be effectuated by the questions. Where disclosure is required of circumstances of an intensely private and personal nature, the discloser is arguably entitled to know the standards by which his revelations will be assessed.

The Government's Exhibit B in the District Court purports to be a statement of those standards. Although it is in form a letter from the Commission to a private organization, its offer in evidence

8. The Government appears to accept the principle that "immoral conduct" in this context means the commission of homosexual acts. In view of the position taken by the Government on this appeal, we perhaps do not need to decide definitively whether, on the second attempt, the Commission identified and established such acts in such manner as to support a finding of "immoral conduct." We note in this regard, however, that the two new items added by the investigation report to what was adduced before were (1) the statement by appellant's former supervisor as to appellant's alleged characterizations of himself, including what is at most a highly ambiguous admission of unspecified homosexual acts, and (2) appellant's failure to challenge a neighbor's public reference to him as a homosexual. It seems most unlikely that these additional items could be regarded as meeting the burdens which we conceived of as resting upon the Commission in our earlier decision.

9. Scott v. Macy, 121 U.S.App.D.C. 205, 208, 349 F.2d 182, 185 (1965) (McGowan, J., concurring).

by the Government indicates that it may be considered to be an authoritative expression of Commission policy. In this area, of course, the Commission is dealing with an issue as difficult as it is delicate, and precision in communication is correspondingly hard to achieve. Doubtless because of this fact, the statement has its full share of seeming anomalies and contradictions.

In it the Commission first describes its official policy to be that persons "about whom there is evidence that they have engaged in or solicited others to engage in homosexual or sexually perverted acts with them, without evidence of rehabilitation, are not suitable for federal employment." This would appear to mean that any homosexual act or solicitation is disqualifying, except as one has abandoned the practice entirely at some time in the past. The Commission goes on, however, to say that it is concerned only with conduct, not tendencies, and in appraising conduct it recites a number of pertinent considerations, including "the total impact of the applicant upon the job," which seems in some degree at least consistent not only with past but also with present and continuing homosexual acts. This is followed by a stern reminder that such acts, even though wholly private in nature, are contrary to the criminal laws in virtually all jurisdictions, and that, of necessity therefore, they must be considered to be "immoral conduct." Under this last, it would appear that the only relevant consideration, as contrasted with those which have just been enumerated, is whether an applicant has been or is now committing

homosexual acts.[10] The Commission then is at some pains to deny that it either does, or can, inquire into private sexual conduct. In its words, "[a]s long as it remains truly private, that is, it remains undisclosed to all but the participants, it is not the subject of an inquiry." But where for some reason it attracts public notice, the Commission will ask, and presumably will disqualify, if either there is a refusal to respond or an admission of a homosexual act. Qualification for federal employment thus appears to turn not upon whether one is a law violator but whether one gets caught.

We do not mean to minimize the difficulties which the Commission confronts in this area, including those which are unnecessarily manufactured for it by inflexibilities on all sides. It is functioning in a field where public policy is in something of a state of flux, with old certainties dissolving and new ones unformed. We are not disposed to compound its problems unnecessarily nor to foreclose reasonable inquiry by it, but we do note the importance and relevance of a clear policy line to the demarcation of appropriate disclosure requirements.

The judgment of the District Court is reversed, and the case is remanded for the entry of a judgment in accordance with this opinion.

It is so ordered.

BURGER, Circuit Judge (dissenting):

For the second time, this Court takes an action which evades the central—indeed the only—issues in this case.

---

10. Compare the Commission's stated policy with respect to violations of criminal laws generally:

The Commission or the agency shall decide the fitness of each applicant with a record of law violations .on its individual merits, taking into account such matters as the nature and seriousness of the offense, the circumstances under which it occurred, how long ago it occurred, whether the offense was an isolated or repeated violation, the age of the person when he committed the offense, social conditions which may have contributed to the offense, any evidence of rehabilitation, and the kind of position for which the applicant is applying. Accordingly, after all the facts have been gathered and evaluated, if the applicant is considered a *good risk* offender, his application will be rated eligible.

Civil Service Commission Federal Personnel Manual System, Section 2–4(a)(2), Inst. 85, Jan. 27, 1967.

Those issues are first, must the Civil Service Commission approve an applicant who refuses to answer questions concerning a record of arrests and reliable reports of grave personal misconduct; second, whether this Court has the power to change a government employment policy which makes admitted or proven homosexual conduct a valid basis for refusing employment to an applicant for a government position; third, has the Government given reasonable notice to Appellant of the basis for rejecting his employment application.

More than two years ago a divided Court reversed and remanded this case to the Civil Service Commission for reconsideration, but without any guidelines except what could be gleaned from two separate and inconsistent opinions by Judges Bazelon and McGowan.

I dissented then because I was satisfied that Judge Bazelon's suggestion of a "vague finding" by the Commission[1] and Judge McGowan's suggestion of inadequacies of the notice given to Appellant were totally lacking in record support. This, of course, is markedly dissimilar from the point Judge McGowan now purports to rely on, i. e., that the Commission by its actions has in some way concealed the true basis for its decision. Both of my colleagues, then as now, ignored the hard fact that every stage of the proceedings—including the first appeal in this Court—was deliberately cast by Appellant in terms of asking that the decision be made on the assumption that he had in fact engaged in homosexual conduct. How can it be said in the face of this that there was or is anything vague, uncertain or ambiguous about what was being litigated?

The facts, undisputed on this record, although covered in the earlier opinions, bear restatement as to the salient points:

1. The record before the Commission disclosed that

(a) a 1947 arrest for "loitering" was shown in context to be the customary police euphemism for an arrest relating to homosexual conduct and Appellant does not seriously challenge this;

(b) a 1951 arrest was shown against the same general background;

(c) Appellant's answer to the question of whether he was a homosexual was that he did "not believe the question is pertinent in so far as job performance is concerned";

(d) the Civil Service Board of Appeals and Review responded to Appellant's demand for details "of how, when and where" his immoral conduct had occurred by a finding— which surely gave him notice—that "the records disclosed convincing evidence * * * [of] homosexual conduct. * * * " Appellant refused to comment on the report which the Commission made available to him. Appellant's demand was, of course, hardly consistent with his position that the inquiry was not pertinent to his job qualifications;[2]

(e) after remand, the Commission specified that it relied on the two arrests, the statement of a former employer that Appellant had told him he was perverted and lived with another male as his "lover" and Appellant's failure to respond to

---

1. It is worth noting that the majority opinion does not place any reliance on Judge Bazelon's position in the prior opinions that there was insufficient evidence of homosexual conduct. In light of Appellant's litigation position that argument remains as unsupportable now as it was then.

2. Appellant as an *applicant* is not like a litigant entitled to assert inconsistent defenses. However, viewed as a litigant, he is at once demurring to a "complaint" and demanding a bill of particulars.

questions relating to these arrests and reports;

(f) at critical stages in the course of this prolonged litigation Appellant has insisted that his claims be decided on the assumption that he is a homosexual; he argues that the word "perverted" had no meaning to him, that he had always sought "to be true to my real self * * * —not to pervert myself into something I am not" and that whether or not he was a homosexual was irrelevant to his federal employment.

2. If there was any doubt that Appellant made his election to stand on his claim that his private conduct was irrelevant to eligibility for employment, it was dispelled when, on his appeal, he requested the Board of Appeals to

> assume that I have engaged in "homosexual conduct," and let me equate "homosexual conduct" with "homosexual outlet" as used in Chapter 21, pages 610–666, of *Sexual Behavior of the Human Male* by Alfred C. Kinsey, Wardell B. Pomeroy and Clyde E. Martin, and with "homosexual responses and contacts" as used in Chapter 11, pages 446–501, of *Sexual Behavior of the Human Female* by the same authors with Paul Gebhard. (Footnotes omitted.)

By every rule and standard of orderly procedure, the Civil Service Commission and this Court had a right—probably a duty—to take Appellant at his word and decide the issue on the terms he postulated. In the face of this explicit challenge of Appellant, I find it extraordinarily difficult to understand how Judges Bazelon and McGowan can expect to be taken seriously when they suggest—both in the prior opinions and here—that Appellant had inadequate notice of "the standards by which his revelations will be assessed." What more notice does Appellant need when *he* has postulated the

issue on which the decision is to turn and loftily informs the Government that the subject matter, on which notice my colleagues would say is lacking, is irrelevant? Justice Frankfurter once observed that "Litigation is the pursuit of practical ends, not a game of chess."

The majority rests its case largely on the Commission's letter which is reproduced in pertinent part in its note 2. From this letter the majority finds an ambiguity as to the grounds of disqualification. But this letter must be read along with all the evidence including Appellant's concession of homosexual conduct. In light of that letter the majority position that Appellant was left in doubt as to why he was rejected is beyond my comprehension. No one on either side of this case and surely no one on this Court can really have any doubt why Appellant has been denied government employment, *i. e.*, his refusal to discuss highly relevant aspects of his fitness against the background of unchallenged reports as to prior conduct.

The majority also rests on the proposition that Appellant was not apprised of the reason for which he was discharged. But the letter sent to Appellant by the Commission stated not one, but several reasons for disqualification. As we have just noted one of the reasons was the failure to respond to the questions concerning personal conduct. Since none of the underlying facts were denied by Appellant and so long as *one* of the stated reasons is valid the Commission must be upheld if we follow the law.[3] 5 C.F.R. § 731.201(b) & (d) (1968); *see* 5 C.F.R. § 5.3 (1968). While disavowing an intent "to foreclose reasonable inquiries by" the Commission, the conclusion of the majority denies the Government's right to secure answers from Appellant. The Supreme Court, however, has repeatedly affirmed the power of the Government to refuse employment to persons who refuse to answer questions relevant to fitness or suitability for public service.

---

3. *Cf.*, Gibson v. United States, —— U.S. App.D.C. ——, 403 F.2d 569, decided August 30, 1968; Western States Reg. Council No. 3, Int. Woodworkers v. N. L. R. B., D.C.Cir., 398 F.2d 770, decided June 19, 1968.

*E. g.*, Nelson v. County of Los Angeles, 362 U.S. 1, 80 S.Ct. 527, 4 L.Ed.2d 494 (1960); Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); Garner v. Board of Public Works of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1950).

I suggest that Judges Bazelon and McGowan misconceive and blur the real issues in this case. It is not a question of whether homosexual conduct should be considered criminal conduct but whether it is within the discretion of the Executive and the Legislature to have an employment policy that reliable reports of homosexual conduct as to an applicant for employment permit the Commission to require the applicant to respond to further questions. Is it arbitrary, capricious or irrational for the Commission to ask such questions or to deny eligibility to an applicant for federal employment when the applicant refuses to answer and demands that his status be resolved on the assumption that he engaged in homosexual conduct?

In my view it is not for judges to determine whether the Civil Service Commission policy is a wise or sound policy when that policy is authorized by Congress and not forbidden by the Constitution. Under the guidelines of Cafeteria and Restaurant Workers Union, Local 473, A. F. L.–C. I. O. Workers v. McElroy, 367 U.S. 886, 898, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), the Commission's action must be affirmed unless it is "patently arbitrary or discriminatory." The majority fails to meet this basic issue in the case—indeed it is not even discussed.

Congress has authorized the President to prescribe such regulations for the employment of persons in the Civil Service as may best promote the efficiency of the service. It commands investigations into "age, health, character, knowledge and ability. * * *" Under this authority, one may be disqualified for infirmities of eyesight, hearing, general health, education and experience. That some human infirmities are beyond the

control of the applicant may be unfortunate but it does not undermine the power of the Executive to hire only those whose employment will "best promote the efficiency" of the public service. Do my colleagues now decide *sub silentio* that the government *must* employ sex deviates or that the efficiency of public service is promoted by doing so?[4] Or do they decide that questions may not be asked by the Commission if investigation reveals arrests or association with known criminals or convictions which the applicant did not reveal?

The opinion of the majority reveals by its own terms that it is usurping powers of the policy-making branches of government when it tells the Commission, apparently by way of consolation, that with respect to sex deviates it, the Commission,

> is functioning in a field where public policy is in something of a state of flux, with old certainties dissolving and new ones unformed. We [the majority] are not disposed to compound its problems unnecessarily nor to foreclose reasonable inquiries by it, but we do note the importance and relevance of a clear policy line to the demarcation of appropriate disclosure requirements.

I am not sure I grasp the meaning of this; I would speculate that it can be read as meaning that the Court now takes over from the Executive the power to formulate "public policy" on employment of sex deviates because that "policy is in something of a state of flux. * * *" It would seem to me that if adjustment is needed to changing mores that is indeed a matter of highly sensitive policy. But from whence comes our mandate to make or even suggest policy on this score or our mandate to denounce the policy of the constitutionally authorized branch?

Congress and the Executive make policies in various areas which many reasonable people consider unsound. But policy is not the business of judges.

I am even more puzzled by the majority's disposition of the appeal: is the

---

4. *Contra*, note 5 *infra*.

Commission now compelled to certify Scott as eligible to be a personnel officer? Is the Commission to give new notice and new hearing? What is the solution if the Commission flatly refuses to employ him?[5]

---

5. After these opinions were prepared, the Fifth Circuit decided Anonymous v. Macy, 398 F.2d 317, (5th Cir. July 11, 1968), holding that a Post Office employee's homosexual acts, even though private, provided a valid basis for his discharge.