**Nevin M. RICHARDSON**

v.

**Robert E. HAMPTON et al.**

**Civ. A. No. 2988–70.**

United States District Court, District of Columbia.

July 13, 1972.

---

15. See cases cited in fn. 10, *supra.*

Hope Eastman, Ralph J. Temple, Washington, D.C., of counsel, for plaintiff.

Harold H. Titus, Jr., U.S. Atty., Joseph M. Hannon, Gil Zimmerman, Asst. U.S. Attys., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

### I

This matter is before the Court on plaintiff's motion for summary judgment and defendants' motion to dismiss or, in the alternative, to remand the case to the Civil Service Commission for further proceedings. Having considered the motions and the memoranda submitted in support and opposition thereto, and having conducted an evidentiary hearing on the issue of laches, the Court concludes that plaintiff's motion for summary judgment should be denied, defendants' motion to dismiss should be granted and the motion to remand should be denied.

### II

A brief statement of the facts follows:

(1)  On or about December 29, 1964, plaintiff filed an application for the position of clerk-typist with the Civil Service Commission (herein "the Commission").

(2)  He was hired by the Post Office Department as a substitute distribution clerk on July 17, 1965. This was a one year probationary appointment subject to the usual investigation as to suitability.

(3)  On October 26, 1965, he was ordered to appear for an interview by an investigator of the Commission. He was asked but refused to answer questions concerning his private sexual life. His refusal to answer was grounded upon the assertion that such matters were not the proper concern of the government.

(4) On November 29, 1965, defendant Carlton Beall, then Postmaster of the United States, notified plaintiff that his employment would be terminated on December 3, 1965. The termination was based upon reports that plaintiff had admitted to fellow postal employees that he "was attracted to others of your sex," that he had "encountered resentment" from other postal employees because of his "unnatural inclinations," and that on two occasions plaintiff "had emotional outbursts or seizures" during which he was observed "to lose control of himself, tremble visibly and weep."

The Postmaster's letter further informed plaintiff that he had no right of appeal within the Post Office Department but that he did have a right to appeal to the Commission within ten days of the effective date of his termination if he felt such action "resulted from discrimination because of sex, marital status or physical handicap."

(5) Plaintiff did not reply to the Postmaster's letter nor did he appeal his discharge to the Commission.[1]

(6) On December 20, 1965, the plaintiff informed the Commission that he was available to accept any appointment and requested that he be considered for

---

[1] At a hearing held at the Court's behest on June 23, 1972, on the issue of laches plaintiff testified that he did not respond to the Postmaster's letter of discharge because the letter stated that he had no right of appeal, but that he intended at all times to contest his discharge and to recover his position with the Post Office Department.

federal employment under his pending application for the position of clerk-typist dated December 29, 1964.

(7) Unaware that plaintiff's employment with the Post Office Department had been terminated, the Commission, by letter dated February 11, 1966, notified plaintiff that it was investigating his suitability for the Post Office position and asked him to admit or deny, on the basis of certain information uncovered by investigation, whether he had engaged in homosexual conduct.

(8) Responding to the letter of February 11, 1966, the plaintiff refused to admit or deny that he had engaged in homosexual conduct. He again asserted that his private sexual life bore no relation to his suitability for federal employment. Plaintiff made no mention in his response that his job with the Post Office Department had been terminated on December 3, 1965.

(9) By letter dated April 11, 1966, the Commission notified plaintiff that in the course of its investigation of plaintiff's suitability for his appointment with the Post Office, it had learned that such appointment had been terminated. The Commission stated, however, that it had under consideration his application for the position of clerk-typist dated December 29, 1964, and it had completed plaintiff's suitability investigation in light of that application. The Commission further informed the plaintiff that, as a result of its investigation, it had determined that "evidence of your homosexual activities makes you unsuitable for federal employment." Specifically the Commission found that the plaintiff's homosexual activities constituted "immoral conduct" thereby rendering him unsuitable for employment in the federal service, under Section 731.-201(b) of the Civil Service Commission's regulations, 5 C.F.R. § 731.201(b). That regulation declares that people who

engage in "immoral conduct" are unsuitable for federal employment. The Commission made no finding that plaintiff's homosexual activity interfered with his job performance or with the efficiency of other federal employees. By its action, the Commission canceled plaintiff's eligibility for federal employment and barred him from federal service for three years from that date.

(10) The Commission's action in disqualifying plaintiff from federal employ was taken pursuant to its policy set forth in a letter to the Mattachine Society of Washington from the Commission Chairman John W. Macy. The policy was stated as follows:

"Persons about whom there is evidence that they have engaged in or solicited others to engage in homosexual or sexual perverted acts with them, without evidence of rehabilitation, are not suitable for federal employment. In acting on such cases the Commission will consider arrest records, court records, or records of conviction for some form of homosexual conduct or sexual perversion, or medical evidence, admissions, or other credible information that the individual has engaged in or solicited others to engage in such acts with him. Evidence showing that a person has homosexual tendencies, standing alone is insufficient to support a rating of unsuitability on the ground of immoral conduct." [2]

(11) The plaintiff appealed his disqualification. On July 12, 1966, the Director of the Commission's Bureau of Personnel Investigation denied plaintiff's appeal and affirmed the April 11, 1966, decision. On October 10, 1966, the Commission's Board of Appeals and Review also affirmed the previous decisions.

(12) At the hearing held on June 23, 1972, on the issue of laches, *supra* note

2. The letter to the Mattachine Society is incorporated in the record of this case as attachment "M" to the plaintiff's motion for summary judgment. The letter is dated February 25, 1966. The quoted policy has never been changed although it has been represented by the government from time to time in the course of this and other proceedings that it is being reconsidered.

1, plaintiff testified that he did not have the financial resources to hire an attorney to handle his challenge to the Commission's April 1966 debarment action.[3] In the same hearing it was also brought out that in October, 1966, after his appeal was denied *supra* he sought counsel from Doctor Franklin Kameny, a member of the Mattachine Society and a self-styled "gay libertarian" who was deeply involved in litigation challenging discrimination against homosexuals in federal employment. Cognizant of plaintiff's indigence, Doctor Kameny advised plaintiff not to seek judicial review of his discharge and debarment from federal employment until the decision was rendered in the test case of Scott v. Macy, (*Scott II*), then pending in the Federal District Court for the District of Columbia. Doctor Kameny told the plaintiff that since *Scott II* involved the same issues as those in plaintiff's case, a favorable decision in *Scott II* would render it unnecessary for plaintiff to bear the expense of litigating his claim in the courts. Dr. Kameny also advised plaintiff that no lawyer would take a case of a homosexual nature without a fee.

(13) In January, 1967, the District Court rendered its decision in *Scott II*. It was unfavorable to the plaintiff. On the expectation that the case would be favorably and expeditiously decided in the Court of Appeals, Doctor Kameny advised plaintiff to wait for the appellate decision before bringing suit.

(14) When the Court of Appeals had not issued its decision in *Scott II* by May, 1968,[4] Doctor Kameny, realizing that the chances of a favorable decision were diminishing with the passage of time, finally advised plaintiff to take action to assert his claims.

(15) Acting on Doctor Kameny's advice, plaintiff on May 16, 1968, requested the Chairman of the Commission to reconsider the Commission's decision debarring plaintiff from federal employment for a period of three years and to restore his eligibility for federal employment. The Commission denied plaintiff's request on September 4, 1968.

(16) At this point, Doctor Kameny advised plaintiff to obtain a lawyer and file suit. Plaintiff claimed not to be able to afford a lawyer and further that he experienced difficulty in finding a lawyer to represent him without a fee. In February, 1969, an attorney with the American Civil Liberties Union (ACLU) agreed to try to get relief for the plaintiff from the Commission but not to take his case to court. The ACLU was unable to obtain counsel who would handle the case in court until plaintiff's present counsel agreed to do so in July, 1970.

(17) Plaintiff again sought federal employment by filing an appropriate application in January, 1969. He testified that he did so without intending to abandon his challenge to his previous discharge and debarment from federal employment. He claimed that he merely intended to secure federal employment after his three year debarment expired on April, 1969, so that he could support himself while he challenged his previous discharge and debarment.

(18) By letter dated May 14, 1969, the Commission informed the plaintiff that his most recent application could not be considered "in the absence of affirmative evidence of rehabilitation, i. e. that "the condition which required debarment (homosexual activities) no longer exists."

---

3. In regard to his indigence, plaintiff testified that he was unemployed from December 5, 1965 to November 22, 1966; that he worked for American University for $4,500 per year from November 22, 1966 until June 15, 1967; that he was unemployed during the period June 15, 1967 to January, 1968; that he worked at the Roosevelt Hotel at a wage rate of a $1.50 per hour from January, 1968 to April 19, 1968; and that he has been unemployed since that date.

4. The case was decided Sept. 11, 1968. Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644 (1968).

(19) On June 24, 1969, the Commission requested the plaintiff to sign releases authorizing two of plaintiff's private physicians to furnish the Commission information relating to plaintiff's suitability for federal employment. The plaintiff refused to execute the releases and the Commission thereafter refused to consider plaintiff's application.

(20) This suit was filed on October 8, 1970.

### III

In this suit plaintiff challenges three separate administrative actions, viz. (1) the Post Office Department's 1965 discharge of plaintiff from a probationary position; (2) the Civil Service Commission's 1966 action debarring him from federal employment for a three year period; and (3) the Commission's refusal to consider his 1969 application for federal employment. Ignoring the factual distinctions between these separate actions, the plaintiff broadly contends that both the discharge by the Post Office in 1965 and the debarment by the Commission in 1966 were based on plaintiff's private sexual preferences and conduct without a finding that such private sex habits adversely affected plaintiff's job performance or the efficiency of his organization. The plaintiff further contends that the Commission continues to exclude plaintiff from federal employment on this basis by refusing to consider his 1969 application until he proves that he is rehabilitated and no longer engages in private homosexual activity.

Plaintiff alleges that these actions have effectively barred him from federal employment because of his homosexuality in violation of his First Amendment right to privacy and his right to equal protection of the law as guaranteed by the Fifth Amendment. He seeks a declaration that his discharge and disqualification from federal employment solely on the basis of his alleged homosexual conduct is unconstitutional. Further he asks reinstatement to the job he would now hold under normal progression within the Post Office Department and an award of back pay.

### IV

Review of the Post Office Department's 1965 Discharge and the Civil Service Commission's Three Year Debarment of 1966.

The government argues that the plaintiff is guilty of laches with respect to his discharge from the Post Office Department in 1965 and also with respect to his 1966 debarment from federal employment. The government notes that plaintiff did not file his suit for reinstatement and back pay until four years and ten months after his discharge by the Post Office Department and four years after the final decision of the Board of Appeals and Review affirming his debarment from federal employment.

To establish the defense of laches the evidence must show a lack of diligence on the part of the plaintiff in asserting his rights in court and resultant prejudice to the government. Costello v. United States, 365 U.S. 265, 282, 81 S. Ct. 534, 5 L.Ed.2d 551 (1961). Plaintiff claims that the evidence does not establish either of these elements in this case.

Plaintiff asserts that he has been diligent in seeking judicial review of both his termination by the Post Office Department and his three year debarment by the Civil Service Commission. He points out that he exhausted his administrative appeals from the Commission's decision of April 11, 1966, debarring him from federal employment for three years and he explains his delay in seeking redress in the Courts after the Commission debarment action became final on October 10, 1966, on two grounds.

First, he alleges that the delay resulted from his inability to retain counsel because of his poverty and the difficulty he experienced in finding counsel to represent him without a fee. He urges that the delay which occurred while he was diligently attempting to overcome the barrier of poverty does not warrant the application of the doctrine of laches.

Powell v. Zuckert, 125 U.S.App.D.C. 55, 366 F.2d 634 (1966).

Secondly, plaintiff asserts further delay resulted from his decision to await the result in *Scott II*, *supra*, in the hope that it would be dispositive of the issues in his case thus making it unnecessary to litigate his claims in court. Plaintiff urges that such delay was reasonable and that accordingly the defense of laches does not apply. Duncan v. Summerfield, 102 U.S.App.D.C. 185, 251 F.2d 896 (1957).

The Court does not dispute the validity of either Powell v. Zuckert, *supra*, or Duncan v. Summerfield, *supra*. But it does appear to this Court that plaintiff's arguments and evidence with respect to the issue of laches serve only to explain his delay in seeking court review of the Civil Service Commission's October, 1966, decision debarring him from federal employment for a three year period. In that respect, by asserting poverty and his determination to await the decision in *Scott II*, *supra*, he has justified his delay in seeking judicial review of the Commission's final decision of October 10, 1966.

However, plaintiff loses sight of the fact that he is challenging another agency action in this suit, i. e., his 1965 discharge by the Post Office Department, besides his three year debarment by the Civil Service Commission in 1966. He erroneously assumes that the two actions are merged into one and that by contesting one he also contests the other.

But the two actions are clearly separate and distinct and none of his explanations justifies his delay in failing to contest sooner his discharge from the Post Office Department in December, 1965. There was no reason for plaintiff to await the result of *Scott II* in connection with that action since *Scott II* could not reasonably be expected to dispose of the issues in any suit challenging his 1965 discharge. *Scott II* involved the challenge by an applicant for federal employment of his disqualification "because of immoral conduct" based solely on evidence of his homosexuality.

A suit contesting plaintiff's separation from the Post Office Department as a probationer would involve a determination of the validity of a termination based upon specific findings that (1) plaintiff's professed homosexual inclinations had caused resentment among his fellow employees and (2) plaintiff had been observed on two occasions to lose emotional control of himself on the job. This question is decidedly different than that presented in *Scott II*.

The record establishes that plaintiff never acted to contest his 1965 discharge from the Post Office Department until his suit was filed in October, 1970. He never appealed the Post Office Department's decision despite the fact that the letter of discharge stated that he had a limited right of appeal to the Civil Service Commission if he thought that his discharge resulted from discrimination because of sex, marital status or physical handicap. While plaintiff's claims may not have fallen strictly within the scope of this right of appeal, he did not investigate to ascertain whether in fact he possessed a right of appeal. He made no attempt to contest his discharge in court. And plaintiff has not urged or established that he possessed insufficient financial resources during the period immediately following his discharge. Even if we assume indigency during this period, there is no evidence in the record of any efforts by the plaintiff to overcome any existing financial impediment to bringing legal action to redress his alleged wrongful termination.

Plaintiff's only explanation for failure to seek review of his 1965 discharge from the Post Office Department is that the Civil Service Commission's letter of February 11, 1966, regarding its investigation of plaintiff's suitability for his Post Office position induced him to believe that his discharge was under active reconsideration and that he should exhaust this avenue of appeal before filing suit. He further explains that he understood the Commission's decision of April 11, 1966, imposing a three year

debarment on him, to be somehow a final adjudication of his discharge from the Post Office Department. Accordingly, he contends that he felt it necessary to exhaust his administrative appeals from that decision before seeking judicial review of his discharge from the Post Office Department.

■ But the Court does not view plaintiff's actions as those of a reasonably diligent man under the circumstances. Persons claiming excuse for delay must show that they exercised the diligence required of reasonably prudent individuals. Morales v. Moore-Mc-Cormack Lines, 208 F.2d 218, 221 (5th Cir. 1953); Pacific Employers Insurance Co. v. Oberlechner, 161 F.2d 180 (5th Cir. 1947).

■ Plaintiff's claimed ignorance of the fact that the Civil Service Commission was conducting a routine suitability investigation in February, 1966, and not reviewing plaintiff's discharge from the Post Office Department does not excuse delay. The plaintiff must establish that he made such inquiry and investigation to determine the actual facts as the circumstances reasonably suggested. *Cf.* Potash Co. of America v. International Minerals & Chemical Corp., 213 F.2d 153 (10th Cir. 1954); Mount Vernon Sav. Bank v. Wardman, 84 U.S.App.D.C. 343, 173 F.2d 648 (1949).

The circumstances suggested that he make some investigation or take some action. The Post Office Department's letter of discharge explicitly stated that his separation was final unless he chose to appeal to the Civil Service Commission within ten days, an action plaintiff failed to take. The Commission's letter of February 11, 1966, informing plaintiff that it was investigating his suitability for his position with the Post Office Department should have alerted him to the fact that the Commission believed the plaintiff was still employed with the Post Office Department. The plaintiff had no reasonable basis to presume that this investigation constituted a reconsideration of the Post Office Department's decision to terminate him, especially in view of the fact that plaintiff knew his initial appointment to that position was subject to a suitability investigation. At least the Commission's letter should have stirred plaintiff to inquire about the matter with the Commission. But the plaintiff made no attempt to notify the Commission of his termination and to ascertain how he might contest that discharge either administratively or in the courts.

■ Plaintiff contends that even though his delay is unexplained, he cannot be barred by laches since the government has demonstrated no prejudice resulting from the delay other than having to grant plaintiff back pay for work he did not perform. This, he argues, is not a sufficient showing of prejudice. But the Court considers that the payment of back pay for services never rendered constitutes sufficient prejudice where the delay in bringing suit is unexplained. Powell v. Zuckert, *supra,* 366 F.2d at 638–639, *citing,* United States ex rel. Arant v. Lane, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919). Since the Court has concluded above that the plaintiff has not adequately explained his delay in suing for reinstatement and back pay, the requisite prejudice is established.

The Court accordingly concludes that the plaintiff is barred by laches insofar as he seeks to invalidate his discharge from the Post Office Department and to obtain reinstatement and an award of back pay.

■ However, the Court cannot find that the plaintiff is guilty of laches with respect to the Commission's three year debarment in 1966. The Court considers that the plaintiff has adequately explained his delay on the basis of his decision to await the result in *Scott II* and his subsequent difficulty in obtaining counsel on account of his poverty. Duncan v. Summerfield, *supra,* Powell v. Zuckert, *supra.*

Nonetheless, the Court concludes that since the debarment period expired in

1969, plaintiff's claim in that regard is patently moot and must be dismissed.

## V
### Review of Civil Service Commission's Action On Plaintiff's 1969 Application

■ The Court has yet to dispose of plaintiff's claims that the Civil Service Commission arbitrarily refuses to consider his 1969 application for federal employment until he proves himself rehabilitated from homosexual conduct. The government asserts that plaintiff's claim in this respect should be dismissed for failure to exhaust administrative remedies in that plaintiff has not pursued his application before the Commission to a final determination. However, it is apparent that plaintiff's exhaustion of his administrative remedies would be futile in this instance. Notwithstanding the 1968 exhortation to the Commission by the Court of Appeals to develop a "clear line," [5] the Commission has continually adhered to the underlying policy of excluding "all persons about whom there is evidence that they have engaged in . . . homosexual acts, without evidence of rehabilitation." It has steadfastly applied this policy to the plaintiff, demanding that he submit evidence of his rehabilitation. It is this basic policy which plaintiff challenges and plaintiff's prosecution of his application in the face of Commission adherence to this policy would be a futile act which the law does not require. NLRB v. Industrial Union of Marine and Shipbuilding Workers, 391 U.S. 418, 426 n. 8, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); Wolff v. Selective Service Local Bd. No. 16, 372 F.2d 817, 825 (2d Cir. 1967); See generally, 3 K. Davis, Administrative Law Treatise § 20.07 (1958). The alternative motion to remand is accordingly denied.

We turn therefore to the merits of plaintiff's claim. We conclude that the Commission may, consonant with the First Amendment, refuse to consider plaintiff's application until plaintiff furnishes information relating to his homosexuality as required under established Commission policy of making reasonable inquiry to determine an applicant's suitability for appointment in the Federal Civil Service (including proper physical and psychiatric condition, and possession of the requisite integrity, character and general fitness).

■ The Supreme Court has repeatedly affirmed the power of the government to deny employment to individuals who refuse to answer questions relevant to fitness or suitability for public service. Konigsberg v. State Bar of California, 366 U.S. 36, 44–45, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); Nelson v. County of Los Angeles, 362 U.S. 1, 6–9, 80 S.Ct. 527, 4 L.Ed.2d 494 (1960); Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). Admittedly, when the government seeks to inquire into an individual's beliefs and associations and other protected areas, it carries a heavy burden to show that the inquiry is necessary to protect a legitimate governmental interest. Gibson v. Florida Legislative Investigation Committee, 372 U. S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963). And the Courts have increasingly recognized that an individual's private sexual preferences, activities and associations are among those areas protected from governmental inquiry by the First Amendment. Norton v. Macy, 135 U.S.App.D.C. 214, 217, 417 F.2d 1161, 1164 (1969); Scott v. Macy, 131 U.S. App.D.C. 93, 97, 402 F.2d 644, 648 (1968); Ulrich v. Laird, Civil No. 203–71 (D.D.C. filed Sept. 28, 1971); Gayer v. Laird, 332 F.Supp. 169 (D.D.C. filed Sept. 28, 1971); In re Labady, 326 F. Supp. 924 (S.D.N.Y.1971); See also, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Stanley v. Georgia, 394 U.S. 557, 564, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). It follows that the government must demonstrate a genuine need to protect a legitimate interest before it can inquire

---

5. Scott v. Macy, 131 App.D.C. 93, 402 F.2d 644 (1968).

into the details of the private sex life of an applicant for federal employment.

But even the *Scott* and *Norton* cases, so heavily relied upon by plaintiff, acknowledge that the government has a legitimate interest in protecting job efficiency and that "homosexual conduct of an employee might bear on the efficiency of the service in a number of ways." *Norton, supra,* 417 F.2d at 1166. An employees's homosexual conduct may jeopardize the security of classified information because of the threat of blackmail, or it may in some circumstances be evidence of an unstable personality unsuited for particular kinds of work. In other instances a homosexual employee might engage in notorious and flagrant displays of unorthodox sexual behavior or make offensive overtures while on the job. Such conduct would certainly have a detrimental effect on other employees and the overall efficiency of the service.

It follows that the government has a need to make reasonable inquiry of an applicant for federal employment, about whom there is evidence of homosexuality, to determine whether the applicant's homosexual conduct will likely affect his suitability for appointment in the federal civil service. Furthermore, the government has the right to refuse to consider an application if the applicant refuses to answer such reasonable inquiry.

Of course, the government does not have an unfettered license to interrogate an applicant concerning his private sex habits. For, while the government has a legitimate interest in excluding from its employ individuals who be-

cause of their homosexual activities have some ascertainable deleterious effect upon service efficiency, it cannot protect that interest "by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). Therefore, its inquiries must be reasonably calculated to elicit information concerning an applicant's private sex life which bears directly on his suitability for federal employment.

In the opinion of the Court the Civil Service Commission has met this standard in the instant case. The plaintiff was discharged from his last federal employment because of demonstrated emotional instability on the job. There is also evidence in the record that plaintiff attempted to make a sexual advance on a sixteen year old boy at an office building of the Department of Health, Education and Welfare while plaintiff was employed there in 1965.[6]

In view of this background, the opinions of plaintiff's private physicians, which the Commission has sought, would appear to be highly relevant as to plaintiff's suitability for federal employment.[7] Accordingly, the Court dismisses this case without prejudice to the plaintiff's right to renew his application on condition that he answer reasonable and pertinent questions but with the burden placed on the government, after investigation, to make a specific finding as to whether or not plaintiff's homosexual tendencies, if they are found to exist, would interfere with the performance of his duties or the performance by others of their duties.

6. Information disclosed by Investigation in the Case of Nevin Matthew Richardson dated February 11, 1966 at 6, Exhibit E of the Complaint.

7. The instant case is distinguishable in this regard from Ulrich v. Laird, *supra,* and Gayer v. Laird, *supra,* where the government displayed gross insensitivity to the complainants' rights to privacy by making broadsweeping inquiries into the intimate details of their private sex lives without establishing a nexus between the information sought to be elicited and the complainants' ability to protect classified information. Here the necessary nexus is established.