George **CONNELLY**, Appellant,

v.

Paul H. **NITZE**, Secretary of the Navy, et al., Appellees.

No. 21085.

United States Court of Appeals District of Columbia Circuit.

Argued March 5, 1968.

Decided Aug. 15, 1968.

---

Mr. Edward L. Merrigan, Washington, D. C., for appellant.

Mr. Gil Zimmerman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellees.

Before BAZELON, Chief Judge, and McGOWAN and TAMM, Circuit Judges.

McGOWAN, Circuit Judge:

Appellant brought suit in the District Court against the Secretary of the Navy and the Civil Service Commission, seeking a declaration of the illegality of his dismissal from federal employment and an injunction restoring him to his job. On cross-motions for summary judgment, the District Court, without any identification of its reasons, held for appellees. Our examination of the administrative record filed in the District Court fails to convince us that the Navy, in proceeding without a hearing, acted within either the spirit or the letter of its own regulations. Because its error in this regard may have been induced in some considerable degree by the ambiguities of appellant's position *vis-a-vis* a hearing, we have concluded to vacate the judgment of the District Court dismissing the complaint, and, with all further proceedings thereunder stayed for the time being, to remit the parties to the holding by the Navy of an evidentiary hearing on its charges.[1]

I

In 1961, appellant was a civil service employee with 17 years of unexceptionable service as a fire fighter at the Patuxent River Naval Air Station. He was

---

1. We have pointed out before that these employee discharge cases, although in form original actions in the District Court, are in reality agency review proceedings and are normally treated as such by all parties. Dabney v. Freeman, 123 U.S. App.D.C. 166, 358 F.2d 533 (1965). This creates difficulties, as here, in our ability to give, effectively and expeditiously, the most appropriate kind of relief. It also raises questions as to why Congress should not provide for statutory direct review of Civil Service Commission determinations in employee cases, comparable to that now employed in respect of other major federal administrative agencies.

also a life-long resident of the local community of Leonardtown, Maryland. On May 19 of that year he received a notice of proposed removal for immoral conduct, in which he was "charged with the commission of homosexual acts with (three enlisted men—Etheridge, Morrill, and Coyle) during the period of 1 January to 1 May 1961." Appellant requested a formal hearing, and one was convened before a three-man group which characterized itself as "a fact finding board, not a court," with the mission of making a report to the Commanding Officer of the Air Station.

At the outset of the hearing the chairman of the board, a naval officer, referred to the charges and said that appellant could proceed with evidence in his defense. When appellant's counsel suggested that he had no evidence to present *if* the Navy had none, the chairman stated that "[W]e don't intend to call any witnesses at this particular time." When counsel then asked "[A]re you going to present the prosecution first?" the chairman replied "[T]his is not a court. We are just arriving at facts. We have some facts in our hands right now and we want other facts. * * *" Appellant's counsel then said he would, for the convenience of his character witnesses who were present, be willing to go ahead with their testimony alone, and this was done.[2]

Following this evidence, the chairman read from written statements by Etheridge, Morrill, and Coyle. The chairman asked appellant why he thought these men would make such statements, and appellant said he thought it was because they wanted to get out of the Navy.[3] The three men were then successively called by the chairman as witnesses. When appellant's counsel undertook to examine them about their statements (although the chairman had declined to make the statements physically available to counsel for this purpose) each refused to answer any questions. A typical exchange is the following with Coyle:

Q. How long have you known Mr. Connelly?

A. I refuse to say anything about that. I have taken Article 31.

Q. Have you engaged in any unnatural sexual acts with Mr. Connelly?

A. I say I refuse to testify.

Q. You made a statement that at one time you were trying to get out of the Navy?

A. That's true.

Q. How would you go about that?

A. There was some hardship difficulties at my home and I put in a request that was denied.

Q. You are not particularly anxious about staying in the Navy, are you?

A. It doesn't matter one way or another.

The chairman formally read into the record the complete written statements of Etheridge, Morrill, and Coyle, and then asked appellant if he denied their truth. He replied that "[T]hese are all untrue as far as I'm concerned." The hearing ended with counsel protesting that appellant could not possibly be found guilty on written charges which the makers refused to affirm in open hearing.

The Commanding Officer did, however, find appellant guilty of the acts

2. These witnesses included a number of appellant's friends and neighbors of long standing in the local community. Also, letters attesting to appellant's good character and expressing disbelief in the charges were submitted from such persons as the president of the local bank, the county sheriff, the state's attorney, and the chairman of the county liquor board.

3. Appellant also testified that he had been threatened physically by Etheridge because the latter was pressed by appellant to repay a small loan. Fellow employees of appellant testified in corroboration of the making of these threats.

charged, and separated him from his job. However, the Secretary of the Navy, on December 1, 1961, sustained appellant's appeal and directed his restoration to duty because "the procedure followed in effecting your removal from employment was fatally defective." He added that, if appellant accepted restoration, "new and procedurally correct action to remove you may be instituted upon your return to duty."

■ Appellant did not learn until after the entry of judgment by the District Court in this case that, coincidentally with rendering this decision, the Secretary of the Navy had transmitted to the Commanding Officer at Patuxent a memorandum, dated September 14, 1961, by the Chief of the Bureau of Naval Weapons.[4] Although this memorandum recommended that appellant's appeal be denied, it pointed out what it considered to be a number of procedural deficiencies under the governing regulations contained in the Navy Civilian Personnel Instructions [hereinafter cited as NCPI]. Of central interest for present purposes are the following:

(a) Management failed to introduce evidence in support of its case.

(b) The three enlisted men should have been asked to verify their signatures on their written statements and to reaffirm their correctness. Appellant and his counsel should also have been given an opportunity to examine these statements at the outset of the hearing.

(c) No background information with respect to the taking of the written statements was presented. The special

investigators who obtained them should have testified.

Following appellant's return to duty on December 21, 1961, a new action was initiated on January 25, 1962.[5] The notice this time charged only homosexual acts with Etheridge and Coyle, each of whom was referred to as a "former enlisted man" because, as a Government pleading in the District Court states, "[B]efore the Navy began its second removal proceedings in plaintiff's (appellant's) case, Etheridge and Coyle had been, themselves, separated from the Navy" midway through a four-year enlistment in each case. The reason for omitting Morrill, as given by the Government in the same pleading, was that he had, after the hearing described above, repudiated his written statement as false. Attached to the notice were the same written statements by Etheridge and Coyle which had been read into the record of the earlier hearing. But also attached was a new written statement by Coyle, given by him on July 12, 1961, and relating the commission of a fifth homosexual act with appellant on the night of June 14, 1961.

Appellant's first response to this notice was, by a letter dated January 30, 1962, to the Industrial Relations Officer, to request a formal hearing. This letter closed with the statement that "you will be advised at a later date of a person or persons who will represent me at this hearing." Two days later, however, appellant wrote another letter with reference to the notice, this time to the Commanding Officer. Because of its importance, its full text is set forth in the margin.[6] One week later the Commanding

---

4. Prior to argument in this court, appellees moved to strike this memorandum from the record because it was not before the District Court, but they simultaneously disclaimed any objection to its being lodged with us for our examination. In this posture we deny the motion.

5. Appellant argues that, since the NCPI provides that a new removal action (following one found to be procedurally defective) should "normally be initiated

within 15 days," the second removal order is invalid. This issue was not, however, raised at the administrative level, and, in any event, it appears to us on this record as insubstantial.

6. You would be pleased to know that I directed a memorandum, dated January 30, 1962, to the Industrial Relations Officer at the installation, requesting a formal hearing in the matter of my proposed removal action. Since the date of the said memorandum, being possessed of legal ad-

Officer wrote appellant that he found that appellant had committed the acts charged and that he was, accordingly, removing appellant from his job for immoral conduct.

The record before us shows only that the Secretary of the Navy, on October 2, 1962, denied without comment what he described as appellant's appeal of 21 August 1962. The record discloses more fully appellant's efforts to get relief from the Civil Service Commission. Whether appellant has become disenchanted with lawyers generally or at least had had some premonitions about the calibre of the legal advice recently supplied him with respect to his request for a hearing, he was represented in his appeal to the Commission by the Washington-based Director of Employee Relations of the

American Federation of Government Employees—an official whose connection with the legal profession does not emerge clearly either from his title or his correspondence. By letter of February 21, 1962, he appealed on appellant's behalf to the Regional Director of the Commission at Philadelphia. In a response dated March 30, the Regional Director appeared to consider that the only issue raised was the degree of specificity of the notice in the light of relevant Civil Service Commission rules and regulations.[7]

A brief and uninformative letter by the Director of Employee Relations carried the appeal to the Commission's Board of Appeals and Review where it was denied in a letter of August 13 which again treated the only issue before

vise [sic] advising me of my rights, I am hereby abrogating the memorandum and pray that you take no notice of my request for a formal hearing. A hearing would serve no useful purpose as no new charges were presented, and I have already successfully answered the old charges.

In reply to your notice of proposed removal, please be assured that I plead innocent to any and all charges stated and presumed in your letter. Once before, you were pleased to remove me from service on the same identical charges and, pursuant to my successfully appealing the said decision, I was reinstated on my job. Your present disposition, if earnest, to re-dismiss me from service on an identical set of charges is an undisguised attempt to nullify the orders of higher echelon and a deliberate case of placing me in double jeopardy.

I request that you see fit to put an immediate arrest to the illegal and improper personnel action which, if allowed to go through, threatens to jeopardize my interests. Failing your rescinding the illegal action, I wish to advise you that I will be compelled to take appropriate legal steps to protect my job rights and seek such legal action against any and all persons acting singly or in joint conspiracy to defame me by their false, pernicious and damaging accusation.

If further communication or correspondence is required in regard to this matter, please refer it to my attorney, Mr. Wm.

Loker, Jr., Leonardtown, Maryland. His telephone number is Greenwood 5–2631.

7. The memorandum of the Bureau of Naval Weapons, referred to above in note 4, characterized the NCPI as requiring that a notice of proposed separation "shall state any and all reasons * * * specifically and in detail, including dates, specific instances, and other data sufficient to enable the employee to fully understand the charges and to adequately" defend against them. It went on to say of this case "that the activity could have been more specific in citing the charges by giving approximate dates and locations of the specific actions * * * [which] would have materially enhanced the station's position with respect to this requirement."

This comment was, of course, made with respect to the first charges, which alleged only the commission of homosexual acts with Etheridge, Morrill, and Coyle "during the period of 1 January, 1961 to 1 May 1961." The underlying Etheridge, Morrill, and Coyle statements give no specific dates for the alleged acts.

The second notice of removal alleges two acts with Etheridge between January 1 and May 1. It alleges four acts with Coyle "on or about 15 January 1961, 20 January 1961, 20 February 1961 and in March 1961." It further alleges a fifth act with Coyle "on the night of June 14, 1961, on a road outside of Leonardtown, St. Mary's County, Maryland."

it for resolution as the one of specificity under Commission requirements. On March 8, 1963, the president of the union wrote directly to the Commission, asking that the decision of the Board of Appeals and Review be reopened and reconsidered. By letter of May 24, 1963, the executive assistant to the Commissioners responded that they had declined to act as requested. The suit in the District Court was filed August 31, 1964.

## II

The Government has tirelessly, in brief and argument, reminded us that appellant's first discharge in 1961 is not before us for review. We are cautioned, rather, to remember that that is a closed book, with eventual justice done by the Navy itself, at least in its more rarefied reaches, and with appellant correspondingly made whole and restored to duty. What, so we are told, we may and should address ourselves to are only those objections to the second discharge which were raised at the administrative level and not for the first time in the District Court or here. Within the framework of these general propositions—which we have no difficulty in embracing—the Government argues that there can be no issue bottomed upon the absence of a hearing since appellant himself waived one. In any event, it insists, no claim of a violation by the Navy of its own regulations in omitting a hearing was raised by appellant prior to the conclusion of the administrative processes applicable to his discharge.

At the time of the events in question, the Navy had in effect detailed regulations governing "adverse actions taken against employees because of their misconduct." These were embodied in the Navy Civilian Personnel Instructions. Sections 2–3 of NCPI 750 purports to state the "general principles" which are to be applied and, under a category denominated "[D]etermining the facts," these are included:

(1) The primary function of disciplinary procedure prior to decision is to determine the facts, not to provide a means for prosecuting the employee.

(2) A prima facie case against the employee must exist before disciplinary action is initiated. A prima facie case is one established by sufficient evidence to justify a presumption of guilt beyond a reasonable doubt.

\*     \*     \*     \*     \*     \*

(4) It is management's responsibility to ascertain all pertinent facts prior to making a final decision and to uncover and attach due weight to factors supporting the employee's position whether or not the employee offers such factors in his own defense.

Section 5 of NCPI 750 is addressed to the procedures which "must be used" whenever disciplinary action is taken against a Navy employee. Section 5–5 provides that a hearing must be held whenever an employee requests one, but it goes on to say that:

[H]earings may be held, in the discretion of management, when the employee fails to request such hearing, if it is believed that hearing the case will lead to a better understanding of the issues and more equitable action.

It seems as clear to us in letter as it is commendable in spirit that these regulations exhibit a deep concern for the importance and the integrity of the finding of facts. This is carried to the point of instructing that hearings should on occasion be held even when the employee does not seek one. What such an occasion would be obviously depends upon whether the particular circumstances would leave a lingering sense of disquiet about facts found without exploration in open hearing. It is in this context that we examine the Government's claim of waiver.

Appellant's immediate personal response to the second discharge notice was to request a hearing. It was only after getting "legal advise [sic]" that he wrote his second letter, set forth above in note

6.[8] That "advise" may have been ill-conceived, but NCPI 750 does not appear to us to dispense with thorough fact-finding simply because an employee is on thin ice legally in the assertion of his procedural rights.

What appellant's second letter says essentially is that it was wrong for the Commanding Officer to go after him again on charges which their makers would not back up in public the first time round. This may, particularly in view of the new affidavit from Coyle, have been a highly questionable position for appellant to take *vis-a-vis* a hearing, but neither is it the same as dispensing with a hearing because one admits the truth of the charges. The letter does expressly reiterate a claim of innocence of "any and all charges stated and presumed in your letter"—new as well as old. And the maker of the new charge is the same Coyle who would not stand behind his written statement at the first hearing. It is, of course, possible to characterize appellant's letter as a "waiver," but, if its exact language is considered in the context of what had happened, it is hardly to be taken as a concession that the facts charged are true.

It was, in any event, a waiver which was seized upon by the Commanding Officer with alacrity, and a letter from him was forthcoming within less than a week finding the charges to be true and separating appellant from his job. It is this action which is, in our view, scarcely in consonance with the regulatory instruction that a hearing, even though not sought, is desirable if it "will lead to a better understanding of the issues and more equitable action." It is also at odds with the emphasis laid by the regulations upon accurate fact finding, irrespective

of the employee's efforts in his own behalf, and with the command that no disciplinary action even be instituted unless there exists a prima facie case "established by sufficient evidence to justify a presumption of guilt beyond a reasonable doubt." NCPI 750, Sections 2–3, 5–5.

■ Of course we are not now dealing with the first discharge, but no one can read the full record of that hearing, as we have done, without thinking that a Navy decision to pursue appellant a second time upon the written charges of Etheridge and Coyle should issue in fact-finding founded upon their testimony in a public hearing. The Government does not now really assert the contrary. It seizes, rather, upon the circumstance of appellant's so-called "waiver" as making the fact-finding academic. We hold that the "waiver" was not such as to relieve the Navy from observing its own regulations concerned with the integrity of the fact-finding process and the establishment of an employee's guilt "beyond a reasonable doubt."

### III

■ The question remains as to whether appellant may raise here the violation by the Navy of its own regulations with respect to the principles and procedures governing fact-finding. These are, as noted above, contained in NCPI 750, Sections 2 and 5. It is true that a claim of error founded expressly upon these provisions first appears in the complaint filed in the District Court. But we think this administrative record is to be read with a regard for substance and not form, and with due allowance for the fact that union representatives, like laymen generally, are not notably sensitive to legal niceties.

8. The Government now suggests that appellant avoided a hearing because he did not want to face the issue raised by Coyle's new statement charging a further homosexual act after the first hearing. But this inference clashes somewhat with appellant's first reaction, which was to demand a hearing. The Government also regards it as signficant that Coyle's new statement contained a waiver of his Article 31 privilege against self-incrimination; it says that this gave appellant reason to think that, despite Coyle's reticence at the first hearing, Coyle would tesitfy fully at a new hearing. But the language of the old and new Coyle affidavits on Article 31 is identical.

In the first letter of appeal to the Civil Service Commission, addressed on February 21, 1962 by the Director of Employee Relations to the Regional Director in Philadelphia, the first point made, after quoting judicial language to the effect that a person should not be discharged from federal employment "without a full investigation of the facts alleged to warrant his discharge," was that:

> " * * * In the case under discussion, *leave alone a full investigation of the facts,* the agency has failed to even meet the minimum procedural requirements required under the civil service regulations or the Navy's civilian personnel instructions." (emphasis supplied)

The remainder of the letter is largely devoted to an assertion that the charges lacked the specificity required by both the Federal Personnel Manual and NCPI. But it seems plain to us that a palpable complaint was made that the Navy had erred in not going about its fact-finding in a manner consistent with its own standards—a supposition which is buttressed by the closing of the letter with Justice Frankfurter's language from Vitarelli v. Seaton, 359 U.S. 535, 546–547, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012 (1959) that "[A]n executive agency must be rigorously held to the standards by which it professes its action to be judged * * if dismissal from employment is based on a defined procedure, even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed. * * * "

The Regional Appeals Officer apparently addressed a letter of inquiry to appellant's representative because the record shows a response by the latter on March 19, 1962. This last letter, although reiterating the contention that the charges were too imprecise, also referred to the fact that, of the three original complainants, one had recanted and the other two had refused to support their respective statements at the prior

hearing. In these circumstances, so it was said on behalf of appellant:

> " * * * While the witnesses have been understandably callous in making their statements, we are shocked at the eagerness with which these fictitious statements were accepted by the agency without once asking questions and deliberating upon the truthfulness or otherwise of the said statements."

The Regional Director of the Commission disallowed appellant's appeal, treating the issue before him as solely one of the adequacy of the notice to provide a fair opportunity for defense, when measured against the requirements of the Federal Personnel Manual. He added that, as to all other questions involving what he termed the "merits" of the Navy's action, the Commission was without jurisdiction. No new representations were made on behalf of appellant in his unsuccessful further appeal to the Board of Appeals and Review, which reaffirmed the Regional Director's disposition.

The president of the union then directed a letter to the Commission itself. In addition to renewing the attack on the adequacy of the notice, he referred at length to appellant's right under NCPI to question and cross-examine witnesses at a hearing, and to the frustration of that right which occurred at the first hearing. Since the witnesses and all but one of the charges were the same as those involved in the second dismissal, it was said that "at the time of the subsequent adverse action [appellant] cancelled his request for another hearing on the grounds that it would be meaningless and would serve no useful purpose, thus, in effect, standing on the [prior] hearing record. * * * " The Commission declined to act.

█ Especially in these days of mounting volumes of litigation, courts cannot sit to correct errors never claimed during the course of the administrative process. And certainly the handling of the appeals to the Commission in this

case is hardly a model of how to go about identifying the defects in agency handling which the Commission should have taken into account. Nevertheless, we think that no one sitting in judicial review of this record can escape the conclusion that appellant did, however imperfectly, complain to the Commission that the Navy had gone about finding the facts in a manner not in keeping with its own standards.

It may be that the Commission looked upon this formulation as falling within what it characterized as the "merits"—an area it did not regard itself as authorized to enter. If so, we think it was mistaken. The challenge is still to the means by which the result was reached, rather than to the result itself. The charges against appellant may possibly have been true, but he unvaryingly denied them, and all but one of them had collapsed once in open hearing. His cancellation of a requested hearing on the ground that he should not be exposed to another one when the first ended the way it did is, if a dubious decision in terms of legal tactics, at least humanly understandable under the circumstances. For the Navy, without further inquiry,

to find the facts against him strikes us as not only irresponsible on its face, but patently in conflict with its own rules and principles of fact-finding in employee cases.

■■ Appellant's questionable "legal advice" in connection with his withdrawal of his request for a hearing, and the less than searching presentation on his behalf made by the union to the Commission, do not dispose us to grant the relief he is immediately seeking—and that relief, being essentially equitable in nature, lies in our discretion.[9] We think that what is called for here is to go back to the point where the Navy adjudged appellant guilty without a formal hearing for inquiry into the facts. To this end, we vacate the judgment of the District Court dismissing the complaint, and we direct it to stay further proceedings in this case for such period of time as will permit the Navy to pursue administrative proceedings for appellant's discharge consistent herewith, and for the exhaustion of all other administrative remedies available to appellant in respect of any such discharge.[10]

It is so ordered.

9. The complaint in the District Court seeks only declaratory and injunctive relief, and no back pay or other monetary damages. We are informed by the Government's brief that appellant has sued the United States in the Court of Claims for back pay, and that that suit is in abeyance pending the disposition of the instant proceeding.

10. As to the issue concededly raised before the Commission, that is to say, the adequacy of the removal notice insofar as specificity is concerned, we find no reason to disturb the Commission's resolu-

tion of the matter. The second removal notice contained an allegation as to one act which was quite concrete as to time and place; and an additional effort was made to indicate the dates of the four earlier acts alleged to have taken place with Coyle. At least in these instances appellant must be taken to be adequately apprised of what he will be called upon to defend against—and that is the central standard by which notice is to be measured. In view of the disposition we make of this appeal, there is no occasion for us to deal with the additional—and broader—issues urged upon this appeal.