**Irving POLCOVER, Appellant,**

**v.**

**SECRETARY OF the TREASURY et al.**

**No. 71–1920.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 14, 1972.

Decided April 4, 1973.

Rehearing Denied May 11, 1973.

Edward L. Merrigan, Washington, D. C., for appellant.

Paul L. Friedman, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, and James F. Rutherford, Asst. U. S. Attys., were on the brief, for appellee. Thomas A. Flannery, U. S. Atty. at the time the record was filed also entered an appearance for appellee.

Before BAZELON, Chief Judge, TAMM, Circuit Judge, and HARRISON WINTER,* Circuit Judge for the Fourth Circuit.

TAMM, Circuit Judge:

Appellant brought suit in the district court against the Secretary of the Trea-

sury, et al., seeking a declaration of the illegality of his removal from federal employment, an injunction restoring him to his position, and a judgment for back pay due and owing him as computed under the Back Pay Act of 1966.[1] On cross-motions for summary judgment the district court, without oral argument and without a statement of reasons, held for the appellee. Recognizing our limited scope of review, and giving due consideration to all the arguments advanced by the appellant in seeking reversal, we affirm the judgment of the district court.

## I.

Prior to a discussion of the facts and law in this case we desire to take note of the duplicative nature of judicial review achieved in employee adverse action litigation. This court pointed out some eight years ago in Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965), that employee discharge cases, although cast in the mold of original actions in the district court for reinstatement and related relief, are disposed of on the basis of the administrative record and should be governed by the principles generally applicable to judicial review of administrative action. See Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644, 647 n. 6 (1968). As such, this court has continually held them subject to specific scope of review limitations. Comparable with judicial review of the actions of other agencies, the base of this specific scope of review—that of review of final employee adverse action taken by the Civil Service Commission [hereinafter "Commission"]—has broadened over the past twenty years, from review limited to insuring statutory compliance, see, e. g., Boylan v. Quarles, 98 U.S.App.D.C. 337, 235 F.2d 834 (1956), to that requiring at least the exercise of discretion by the agency official, see Hargett v. Summerfield, 100 U.S.App. D.C. 85, 243 F.2d 29 (1957), cert. denied, 353 U.S. 970, 77 S.Ct. 1060,

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a) (1970).

1. Pub.L. 89–380, 80 Stat. 94, March 30, 1966.

1 L.Ed.2d 1137 (1957), to finally the more current "rational basis test," *see* Eustace v. Day, 114 U.S.App.D.C. 242, 314 F.2d 247 (1962). Regardless of whether the. test of today is framed in the language of determining whether the Commission acted in an arbitrary or capricious manner, or whether substantial evidence in the record supports its determination, *see Dabney, supra,* 358 F.2d at 535, 537, the fact remains that the district court is engaged in limited judicial review, and that its determination is based upon the agency record submitted to it. No de novo evidentiary hearing is permitted.[2] *See Dabney, supra,* 358 F. 2d at 535.

▪ Almost without exception the district court is presented with cross-motions for summary judgment[3] and its decision is often rendered, as it was here, without a written statement of reasons.[4] When subsequently appealed the court of appeals, limiting itself to the precise scope of review utilized by the district court, renders its decision. No specific deference is paid to the decision of the district court[5] (such would be most difficult in any event in the instance of no district court opinion); rather this court reviews the record and determines anew if there has been procedural error,[6] if there is substantial ev-

---

2. In one special instance in the past cases have been remanded to the district court with instructions to hold evidentiary hearings. In Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), the Supreme Court directed a remand to the district court "with instructions to hold a hearing and determine whether the petitioner, desiring the presence of witnesses at his hearing, either discharged his initial burden under the applicable regulations . . . or . . . whether proper and timely demand was made upon the Air Force so that it was required to produce such witnesses for cross-examination." *Id.* at 765, 83 S.Ct. at 1102. This procedure was followed in Studemeyer v. Macy, 320 F.2d 797, 116 U.S.App.D.C. 75 (1963). The procedure in all other instances has been to remand to the Commission to conduct a new hearing as to a specific factual issue, *see* Goodman v. United States, 123 U.S.App. D.C. 165, 358 F.2d 532 (1966), Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965), to conduct a hearing that was incorrectly denied, *see* Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968), Holden v. Finch, 144 U.S.App. D.C. 310, 446 F.2d 1311 (1971), or upon failure of the record as it stands to remit without prejudice to the agency to institute new procedures, *see* Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644 (1968), 121 U.S.App.D.C. 205, 349 F.2d 182 (1965). The Court of Claims likewise will not conduct evidentiary hearings when it discovers an issue of fact, but will remand to the appropriate agency level. *See* Camero v. United States, 345 F.2d 798, 170 Ct.Cl. 490 (1965).

3. *See, e. g.,* Moore v. Administrator, 155 U.S.App.D.C. 14, 475 F.2d 1283 (1973);

Holden v. Finch, 144 U.S.App.D.C. 310, 446 F.2d 1311 (1971) ; Adams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230 (1969), cert. denied, 397 U.S. 1039, 90 S. Ct. 1360, 25 L.Ed.2d 650 (1970) ; Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169 (1969), cert. denied, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970) ; Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644 (1968), 121 U.S.App. D.C. 205, 349 F.2d 182 (1965) ; Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968) ; Mendelson v. Macy, 123 U.S. App.D.C. 43, 356 F.2d 796 (1966) ; Sudduth v. Macy, 119 U.S.App.D.C. 280, 341 F.2d 413 (1964).

4. *See, e. g.,* Adams v. Laird, 136 U.S.App. D.C. 388, 420 F.2d 230 (1969), cert. denied, 90 S.Ct. 1360, 25 L.Ed.2d 650, 397 U.S. 1039 (1970) ; Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968).

5. All the court of appeals decisions manifest a fresh look at the record and an independent judgment based thereon. *See, e. g.,* Moore v. Administrator, 155 U.S. App.D.C. 14, 475 F.2d 1283 (1973) ; Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968) ; Pelicone v. Hodges, 116 U.S.App.D.C. 32, 320 F.2d 754 (1963) ; Eustace v. Day, 114 U.S.App.D.C. 242, 314 F.2d 247 (1962). Only on rare occasions is the opinion of the district court mentioned, and even rarer is there a reference to whether the scope of review it utilized was correct. Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965), is an exception, but it involved a direct attack by the appellant asserting a right to an evidentiary hearing at the district court level.

6. *See, e. g.,* Adams v. Laird, 136 U.S.App. D.C. 388, 420 F.2d 230 (1969), cert. de-

idence to support the action,[7] or if the Commission action is in some manner otherwise arbitrary or capricious.[8] In other words, we conduct the identical review we are so often called upon to use in statutorily provided judicial review of other agency orders, e. g., F.C.C., N.L.R.B., F.T.C. The only difference is that in this instance our review follows identical review in the district court.

Duplication, delay, expense and despair for the employee-litigant are inherent in such a system. The interposition of the district court serves, it seems to us, no viable purpose. In the case *sub judice* the petition in the district court was filed by appellant on July 18, 1969, and the order granting appellee's summary judgment motion was entered on October 6, 1971—a span of nearly twenty-seven months. We wish not to allocate blame for the delay to either of the parties but to the system which fosters it. Such delay would be understandable if meaningful results were produced. Here we find none. The record before us is identical to that before the lower court, and even if a district court opinion were filed this court would not be required to afford it any special notice.

Perhaps one way to avoid the duplication would be to accord some deference to the district court's review of the record and its determinations. A parallel to such action could be drawn to the Supreme Court's occasional usage of a "hands off" policy regarding courts of appeals decisions in statutory agency review cases. *See* NLRB v. Pittsburgh Steamship Co., 340 U.S. 498, 502–503, 71 S.Ct. 453, 95 L.Ed. 479 (1951), and Universal Camera Corp. v. NLRB, 340 U.S. 474, 490–491, 71 S.Ct. 456, 95 L.Ed. 456 (1951). We find, however, that for several reasons such a maneuver would not be appropriate. (1) The Supreme Court "rule" has developed most strongly in NLRB cases, where the Court has been influenced by the fact that "Congress has charged the Courts of Appeals and not this Court with the normal and primary responsibility for granting or denying enforcement of Labor Board orders." NLRB v. Pittsburgh Steamship Co., supra, 340 U.S. at 502, 71 S.Ct. at 456. No similar Congressional charge exists here. (2) The Supreme Court itself has experienced difficulty in the execution of such a "rule." [9] *See* Gastelum-Quinones v. Kennedy, 374 U.S. 469, 83 S.Ct. 1819, 10 L.Ed.2d 1013 (1963). (3) A "rule" limiting our appellate review to a determination of whether the district court utilized the proper scope of review, or was clearly erroneous (bypassing questions of the difficulty of application) will most likely in application amount either to a rubber stamp—in which instance we will merely be shifting the needless delay from the district court to the court of appeals—or degenerate into the test we presently utilize. (4) Such review would be contrary to unwaivering precedent established in this circuit, and would treat review of Civil Service Commission action differently from that afforded other agencies. A better solution must be found.

Our displeasure with the review procedure currently utilized is not of recent vintage, nor is it original with this panel. Circuit Judge McGowan has on at least four previous occasions made footnote references to the problem. *See* Ad-

---

7. *See, e. g.,* Moore v. Administrator, 155 U.S.App.D.C. 14, 475 F.2d 1283 (1973); Dabney v. Freeman, 123 U.S.App.D.C. 166, 358 F.2d 533 (1965).

nied, 397 U.S. 1039, 90 S.Ct. 1360, 25 L.Ed.2d 650 (1970); Goldwasser v. Brown, 135 U.S.App.D.C. 222, 417 F.2d 1169 (1969), cert. denied, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970); Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968).

8. *See, e. g.,* Mendelson v. Macy, 123 U.S. App.D.C. 43, 356 F.2d 796 (1966); Pelicone v. Hodges, 116 U.S.App.D.C. 32, 320 F.2d 754 (1963); Eustace v. Day, 114 U.S.App.D.C. 242, 314 F.2d 247 (1962).

9. *See generally* 4 K. Davis, Administrative Law Treatise § 29.04 (1958).

ams v. Laird, 136 U.S.App.D.C. 388, 420 F.2d 230, 234 n. 2 (1969), cert. denied, 397 U.S. 1039, 90 S.Ct. 1360, 25 L.Ed.2d 650 (1970); Goldwasser v. Brown, 135 U.S. App.D.C. 222, 417 F.2d 1169, 1171 n. 1 (1969), cert. denied, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970); Scott v. Macy, 131 U.S.App.D.C. 93, 402 F.2d 644, 647 n. 6 (1968); Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416, 417 n. 1 (1968).

■ There is no question that at the minimum a considered, knowledgeable study of the problem is necessary. Quite possibly reasons not now apparent will surface to demonstrate the value of the present procedure. We express no conviction to abandon the present procedure unless close study warrants such a move, and in the last analysis that move must be made by the legislative rather than judicial branch of government. Judge McGowan's suggestion in Adams v. Laird, *supra,* that the topic would be most appropriate for study in the first instance by the Judicial Review Committee of the Administrative Conference of the United States is reaffirmed by this panel. We note that the Conference, acting upon a recommendation of its Committee on Agency Organization and Personnel, has recently adopted *Recommendation 72–8: Adverse Actions Against Federal Employees.* The *Recommendation* calls for expansive changes at the agency level in employee adverse action procedures, changes meant both to provide additional protections to federal employees and to accelerate and simplify the entire process.[10] The *Recommendation* stops short, however, of requesting a revision of the judicial re-

view procedures. In view of this recent concise study of procedure at agency level, further study of the problem at the judicial review level would seem warranted.

The chapeau of a legislator is not one that we, as members of the judiciary, can or should have stashed away in our wardrobe. We may, however, express concern over matters directly affecting the prompt and efficient dispensation of justice. Finding that Judge McGowan's marginal references of the past have been less than marginally successful is generating study,[11] we have elevated them to the text.

II.

On November 30, 1964, appellant, a Grade GS–12 Internal Revenue Agent with eighteen years experience in the federal service and a Veterans Preference Act beneficiary, received a Notice of Proposed Adverse Action from his District Director. The Notice stated, in pertinent part:

It is proposed to both suspend you for not more than thirty days and remove you from the Service in order to promote the efficiency of the Revenue Service for the following reasons:

*Charge I: Acceptance of a Bribe*

*Specification:* On or about May 19, 1961, you accepted the sum of $1,000.00 from Mr. Albert M. Goldstein, an accountant of 4 E. 43rd Street, New York, New York, to influence your decision and action in your audit of the 1959 income tax return of his client, R. Carl and Sarah M. Chandler.

---

10. The Recommendation is based on a report authored by Professor Richard A. Merrill, University of Virginia School of Law. It provides, *inter alia,* for an evidentiary hearing prior to the effective date of the adverse action, and for single appeal therefrom to a central appellate authority within the Civil Service Commission.

11. *But see* J. Trezise, Judicial Review of Civil Service Determinations Involving Discipline or Removal of Federal Em-

ployees, October, 1971, a "tentative working paper of the Administrative Conference of the United States" which advocates statutory review in the court of appeals. The paper notes Judge McGowan's references in the *Connelly* and *Scott* cases, but apparently has not been the subject of any formal action by the Conference. *See also* Johnson and Stoll, Judicial Review of Federal Employee Dismissals and Other Adverse Actions, 57 Cornell L.Rev. 178 (1972).

*Charge II: Failure to Report the Offer of a Bribe*

*Specification:* You failed to report the offer of the bribe set forth in the specification to Charge I above.

The Notice further advised appellant that he had until 5:00 p. m., December 2, 1964, to reply in writing to the proposed suspension, and ten days to reply personally and in writing to the proposed removal (which was to take effect in not less than thirty days).[12] On 4 December appellant, not having replied to the proposed suspension, was notified by letter from the District Director that he was officially suspended without pay. On 8 December appellant's counsel addressed a letter to the Regional Commissioner protesting the suspension and demanding that a hearing "be held to review the actions taken against [appellant] or those contemplated to be taken in the future." Thereafter on 21 December at the direction of the District Director appellant appeared personally before an "oral reply officer." The entire transcript of that proceeding appears in the margin.[13] On 22 December

---

12. The Notice of Proposed Adverse Action did not inform the appellant of the existence of any underlying statements, documents, investigative reports, etc., upon which the Notice was based and which supported the specifications contained therein. This requirement, now found in 5 C.F.R. § 752.202(a)(2), did not become a part of the regulations until November 1, 1970. *See* 35 Fed.Reg. 14,917 (September 24, 1970).

13. The transcript of the Oral Reply Hearing is reprinted in toto:

MR. ISAACS: The purpose of this meeting today is to give Mr. Irving Polcover an opportunity to make an oral reply to the letter of proposed removal or other disciplinary action which was issued to him November 30, 1964.

I have been appointed by the District Director to hear his oral reply and to accept any additional information or evidence that may be submitted. Up to this point, there has been no decision made to remove Mr. Polcover.

After he has had this opportunity to submit his oral reply, the record will be very carefully studied and all the material, including his written reply, if any, will be carefully considered.

The District Director will then render a decision in this case. A verbatim transcript will be made of these proceedings and a copy will be furnished to Mr. Polcover. The proceedings will be informal and rules of evidence will not apply.

These proceedings will be conducted in an orderly fashion. We request that all persons speak clearly and slowly enough so that the tape recorder will be able to record all conversation. I would like to emphasize that this is not an appeal hearing, but an opportunity for Mr. Polcover to present oral statements and whatever other material he may desire to submit, in addition to his written reply, if any, to the letter of proposed removal.

Before we proceed, I would like each individual to identify himself, for the record.

MR. WEINSTEIN: My name is Jerome S. Weinstein. I am the attorney for Mr. Polcover, with offices at 291 Broadway, Borough of Manhattan, City of New York, and to my right is Mr. Polcover.

MR. POLCOVER: I'm Irving Polcover, what you might call the appellant, or whatever you want to call me.

MR. DENU: I am William Denu, I am the Personnel Technician.

MR. ISAACS: Will you proceed, Mr. Weinstein.

MR. WEINSTEIN: I would like to protest the proposed severance of Mr. Polcover from the service, and object to it on the ground that it is illegal, contrary to the facts, contrary to the law, and that all the proceedings heretofore have been without process of law and in disregard of the rights of my client.

Mr. Polcover is entirely, completely innocent of the charges leveled against him, and I believe that the proposed action, as indicated in the letter of November 30th, should be voided.

In conclusion, I would like again to say that the proposed removal of Mr. Polcover from the service is without basis of fact or in law.

MR. ISAACS: Do you have any further statements or any additional evidence you wish to give at this time, Mr. Weinstein?

MR. WEINSTEIN: We have no evidence other than what Mr. Polcover has stated, that he is innocent, that these charges are without foundation or proof.

the District Director reaffirmed his suspension order "[a]fter careful consideration of your [appellant's] statements and those made by your attorney on your behalf." An unsuccessful appeal from the suspension order was taken to the Regional Commissioner.

On 30 December the District Director officially removed appellant from the Internal Revenue Service effective January 5, 1965, and informed appellant of his appeal rights to both the Regional Commissioner and the Civil Service Commission. On January 13, 1965, the appellant by letter of counsel appealed to the Regional Commissioner, stating that "[t]he procedural steps, notices, rulings and perfunctory reviews have been taken by the Service in . . . violation of the rights of my client as an employee and as a citizen of the United States." The letter further challenged the "farcial" [sic] nature of the hearings, the substantiality of proof, the "so-called specifications" in the Notice, and ended with a demand for a full and complete hearing. On January 19, 1965, appellant received acknowledgement of his appeal, but the hearing was unexpectedly delayed.

On February 5, 1965, the appellant received another letter from the Regional Commissioner. In pertinent part the letter stated:

> At the request of the Director, Manhattan District, and the United States Attorney for the Southern District of New York, we are holding administrative action on Mr. Polcover's appeal in abeyance until the completion of the court action currently pending in that Judicial District in which he will be the defendant.[14]

The letter further informed appellant that within ten days after a verdict was reached in the court action he would have to renew his request for an administrative appeal. In April of 1966 a grand jury returned a two-count bribery indictment against the appellant, and in September of 1967, following a directed verdict of acquittal as to one count, appellant received a jury verdict of acquittal as to the other. On September 29, 1967, appellant renewed his appeal. A hearing followed some three months thereafter. The primary evidence against appellant presented at the hearing was the transcript of testimony given by Mr. Goldstein at the previous trial. On February 23, 1968, the Hearing Officer issued a "Report of Findings" which found that a preponderance of the evidence sustained the charges levied against appellant. The Regional Commissioner adopted the report, and appellant subsequently took unavailing appeals to the Civil Service Commission's Regional Office and its Board of Appeals and Review. Such appeals constituted the final agency action in appellant's case.[15]

On July 18, 1969, appellant filed a civil action in the district court against the Secretary of the Treasury, the Commissioner of Internal Revenue, and the

---

MR. ISAACS: If there is no further evidence, I would like to make this statement. Mr. Polcover's reply, submitted here today, will be carefully considered and a decision will be rendered by the District Director.

MR. WEINSTEIN: Thank you.

14. Although a criminal complaint was filed against appellant on November 23, 1964, and he was subsequently arrested, a criminal indictment was not returned by the grand jury until April 7, 1966. The first count of the indictment charged appellant with violation of 26 U.S.C. § 7214(a)(2) (1970) (knowingly receiving a fee not authorized by law for the performance of his duty to audit the Chandlers' tax return); the second count charged violation of 18 U.S.C. § 1001 (1970) (making a false or fraudulent statement in the Internal Revenue field audit examination of the Chandlers' tax return).

15. 5 C.F.R. § 772.307(c): "The decision of the Board is final and there is no further right of appeal." The Commissioners may, in certain enumerated situations, reopen and reconsider any previous decisions. 5 C.F.R. § 772.308. See Massman v. Secretary of Housing & Urban Development, 332 F.Supp. 894 (D.D.C. 1971).

Chairman and Commissioners of the United States Civil Service Commission. He sought a declaratory judgment that his removal from the Internal Revenue Service had been illegal, a judgment for back pay, and an injunction restoring him to his position. He raised, with two notable exceptions discussed below, those issues raised here on appeal. Following cross-motions for summary judgment the district court granted appellees' motion and dismissed the action on October 15, 1971.

### III.

Appellant's challenge is not focused solely on the substantiality of the evidence supporting the Commission's determination of removal, but includes allegations of a multitude of procedural errors which he asserts violated his rights under either the Veterans' Preference Act [16] or the United States Constitution. We have considered all (although all are not specifically discussed), and reject all.

We decline to enter into a lengthy discussion of the facts and underlying evidence supportive of the Commission's action. We recognize the limits imposed on our scope of review (*see* part I *supra*) which bind us to the agency record and preclude a de novo consideration of the evidence. The test is not how we would decide the issue based on the evidence in the record, but whether substantial evidence in the record supports the decision of the Commissioner. *See, e. g.,* Moore v. Administrator, 155 U.S.App.D.C. 14, 475 F.2d 1283 (1973).

The evidence before the Commission's Board of Appeals and Review consisted primarily of that presented to the hearing officer on January 9, 1968, pursuant to the appeal taken to the Regional Commissioner. Included therein is the transcript of the criminal trial testimony of Mr. Goldstein (reasserting that a bribe was given), and Mr. Chandler (disclaiming knowledge of a bribe), a sworn affidavit of Goldstein to the ef-

fect that he had given a $1,000 bribe to appellant in exchange for a favorable audit of Chandler's 1959 income tax return, and various work papers of Goldstein and Chandler tending to support the bribe allegation. Undoubtedly the hearing officer and the various appellate levels after him gave significant weight to the sworn affidavit and testimony of Goldstein. Appellant's evidence consisted chiefly of a complete denial of involvement, his own work papers (which supported the taxpayer's claimed liability, but which were not submitted to the IRS until the day of the alleged bribe), and an attack (which was of some merit) upon Goldstein's credibility. Although we might otherwise view the evidence were we in the legal position of the hearing officer or the Commission, we have little difficulty finding that substantial evidence supports their conclusion that the preponderance of the evidence sustains the specifications and consequent removal. As such, that conclusion must not be altered.

Appellant makes much of the fact that he was acquitted of the parallel criminal charges filed against him, and that the acquittal was in the face of evidence identical to that before the Commission. The difference between proof to a "preponderance" of the evidence, the burden assumed by the agency in administrative proceedings of this nature, and proof "beyond a reasonable doubt," the burden assumed by the government in criminal prosecutions, is critical. As the second circuit court of appeals stated in Finfer v. Caplin, 344 F.2d 38, 41 (2d Cir. 1965), cert. denied, 382 U.S. 883, 86 S.Ct. 177, 15 L.Ed.2d 124 (1965):

> The law does not require that the proof which might lead to an administrative determination that removal would be for the best interests of the IRS be of the same quality as would be necessary to convince a jury beyond a reasonable doubt to convict in a criminal case. The jury to be sure, had not been convinced beyond a rea-

16. 5 U.S.C. §§ 7511, 7512, 7701 (1970).

sonable doubt but the Commissioner could well have concluded that the evidence was substantial enough to justify a refusal to reinstate.

*See also* Silver v. McCamey, 95 U.S. App.D.C. 318, 221 F.2d 873, 875 (1955).

## IV.

Three procedural defects that can be dealt with in summary fashion are alleged.

### 1. *Thirty-seven month delay*

Appellant complains of the thirty-seven month delay between the February, 1965, letter of the Regional Commissioner informing him that his appeal would be held in abeyance until "the completion of the court action currently pending," and the March, 1968, final decision of the Regional Commissioner following a full hearing. Alleging three distinct bases for his complaint appellant conceives such action to be arbitrary, unreasonable, and capricious.

■ (1) Appellant asserts that there was no criminal action pending against him at the time of the notification. While it is true that the indictment did not issue until some fifteen months later, we agree with the appellee that there indeed was a criminal action "pending" from November 23, 1964, when a criminal complaint against appellant was filed by an IRS agent, until the trial in September of 1967.

■ (2) Appellant complains of needless "stigma" that attached for an unreasonable length of time as a result of his inability to clear his name in the administrative proceedings. The stigma of bribery attached primarily because of the pendency and conduct of the criminal proceedings, not because of the removal. Once the criminal action was terminated the full hearing and decision were rendered within a reasonable time.

■ (3) Appellant complains that the delay violated the Veterans Preference

Act and applicable regulations. Although 5 C.F.R. § 771.214 [17] does call for "expeditious consideration" and the avoidance of "unreasonable delay" in the handling of agency appeals, the parameters of reasonable delay must be developed in a practical vein. Nowhere in the regulations is there a proscription of a delay occasioned by circumstances such as these. This court has specifically warned of the dangers of subjecting an employee to an administrative hearing while criminal action is pending. Silver v. McCamey, *supra*, 221 F.2d at 874–875:

> We agree . . . that due process is not observed if an accused person is subjected, without his consent, to an administrative hearing on a serious criminal charge that is pending against him. His necessary defense in the administrative hearing may disclose his evidence long in advance of his criminal trial and prejudice his defense in that trial. (Footnote omitted.)

*See also* Finfer v. Caplin, *supra*, 344 F.2d at 40, and Grossner v. Trustees of Columbia University in City of New York, 287 F.Supp. 535, 551 (S.D.N.Y. 1968). In Cohen v. United States, 369 F.2d 976, 988, 177 Ct.Cl. 599 (1966), cert. denied, 387 U.S. 917, 87 S.Ct. 2029, 18 L.Ed.2d 969 (1967), the Court of Claims was confronted with the identical problem. The test utilized in *Cohen,* and the one we feel should control, was whether any "demonstrable prejudice" could be shown to have been caused by the delay. We find none here, and additionally note an interesting factor we find important, although not controlling. The record shows nothing regarding a request by appellant—following receipt of the Regional Commissioner's "abeyance" letter —that the appeal hearing be held notwithstanding the pendency of the criminal proceedings. There simply has not been a showing that the agency was ar-

---

17. There have been slight changes in the wording and numbering of the Commission regulations over the past eight years. Unless the changes affect substantial rights our citation will be to the current compilation.

bitrary or capricious in the imposition of the delay.

### 2. Right of cross-examination

 Appellant complains that his fifth and sixth amendment rights, along with those preserved for him by the applicable regulations, were violated when the government failed to produce Goldstein, appellant's accuser, at the evidentiary hearing. The record shows that appellant's request for live confrontation was not made until the completion of the hearing, and that although Goldstein had been used by the agency in other hearings, he was not within its employ. Neither the Internal Revenue Service nor the Commission has power to subpoena witnesses, and while 5 C.F.R. § 771.210(f) provides that "[t]he examiner shall give the parties opportunity to cross-examine witnesses who appear and testify," and 5 C.F.R. § 771.211(b) requires an agency normally to render its employees available as witnesses when so requested, no constitutional or regulatory violation existed here. Williams v. Zuckert, 372 U.S. 765, 83 S.Ct. 1102, 10 L.Ed.2d 136 (1963), is controlling in establishing that (a) the burden is on the petitioner desiring the presence of witnesses at his hearing to make a timely and sufficient attempt to obtain their presence, or to show that under the circumstances and without fault of his own he was justified in failing to make such an attempt; and, if so (b) to show that *proper* and *timely* demand was made upon the agency to produce such witnesses for cross-examination. Appellant's demand, coming at the end of the hearing, was neither proper nor timely. *See* Garcia v. Schwartz, 283 F.Supp. 157 (D.Colo.1968), and the cases cited therein. *Cf.* Goldwasser v. Brown, *supra*, 417 F.2d at 1174. Appellant's extensive cross-examination of Goldstein at the criminal trial solidifies our opinion that

no due process violations occurred at the hearing.

### 3. Suspension without opportunity to personally answer

██ Specifically for the first time on this appeal appellant alleges that the failure to afford him an opportunity to personally reply to the proposed *suspension* violated his procedural rights and voided the entire removal process. Only a cursory study of the regulatory scheme adopted to implement the Veterans Preference Act is needed to prove the error of this allegation. Title 5, U. S.C. § 7512(b) (1970) provides, *inter alia,* that "[a] preference eligible employee against whom adverse action is proposed is entitled to . . . (2) a reasonable time for answering the notice personally and in writing . . . ." Adverse action is defined in 5 U.S.C. § 7511(2) (1970) to include "removal, *suspension for more than 30 days,* furlough without pay, or reduction in rank or pay." (Emphasis added.) The suspension of appellant was by its terms for "not more than thirty days," and thus not within the "adverse action" definition. Title 5, C.F.R. § 752.202(d) and (e) discusses the duty status of employees during the notice (thirty day) period prior to removal. Section 752.-202(e) provides that when retention of an employee in an active duty status may be detrimental to the Government or the general public (circumstances we find present when the specifications involve actions of the nature involved in this case) "the agency may suspend him." If the suspension is for thirty days or less, the procedures required in 5 C.F.R. §§ 752.301–04 are applicable. A right to a personal reply is not provided in that instance. 5 C.F.R. § 752.-302(b):

An employee is entitled to a reasonable time [18] for filing a written an-

---

18. 5 C.F.R. § 752.303 provides that when retention of the employee on an active duty status may be detrimental to the Government, etc., "the agency may re-

quire the employee to answer the charges and submit affidavits within such time as under the circumstances would be reasonable, but not less than 24 hours."

swer to the notice of proposed suspension and for furnishing affidavits in support of his answer. If the employee answers, the agency shall consider the answer in reaching its decision.

## V.

The final procedural error asserted by the appellant, and the one we find meriting the most discussion, relates to the effectiveness of his personal reply to the original removal notice. As mentioned earlier, 5 U.S.C. § 7512(b)(2) (1970) grants a preference eligible employee against whom adverse action is proposed "a reasonable time for answering the notice personally and in writing." Appellant charges that this mandate was circumvented when he was not allowed to reply personally to the District Director but was relegated to an "oral reply officer." Asserting that the right to answer personally means the right "to confer with the official who proposes to suspend or remove him," and that under Paterson v. United States, 319 F.2d 882, 162 Ct.Cl. 675 (1963), the placing of an intermediary between the employee and that official does not meet the requirement, appellant attempts to void the removal action.

Reference is made to 5 C.F.R. § 752.-202(b) which provides in pertinent part:

The right to answer personally includes the right to answer orally in person by being given a reasonable opportunity to make any representations which the employee believes might sway the final decision on his case, but does not include the right to a trial or formal hearing with examination of witnesses. When the employee requests an opportunity to answer personally, the agency shall make a representative or representatives available to hear his answer. The representative or representatives designated to hear the answer shall be persons who have authority either to make a final decision on the proposed

adverse action or to recommend what final decision should be made.

The language of the regulation is clear enough, and would indicate that the oral reply officer must at a minimum have power of recommendation. Yet the unique propensity of the legal process to render murky the clearest of thoughts has run its normal course. Within certain guidelines, namely that an oral reply is assured, see Washington v. United States, 147 F.Supp. 284, 137 Ct.Cl. 344 (1957), petition for cert. dismissed per stipulation, 355 U.S. 801, 78 S.Ct. 6, 2 L.Ed.2d 19 (1957), that an interview with any particular officer is not guaranteed, see O'Brien v. United States, 284 F.2d 692, 151 Ct.Cl. 392 (1960), and that an "investigator intermediary" is not permissible, see Paterson v. United States, supra, the requirement has been subjected to varying interpretations. This is in part due to a 1960 Court of Claims decision, O'Brien v. United States, supra.

In O'Brien a Justice Department employee received notice of proposed adverse action and was granted an oral reply to the first assistant to an Assistant Attorney General. The Assistant Attorney General possessed the power to recommend dismissal to the Deputy Attorney General who had the power of termination. The employee-petitioner raised a familiar challenge, and the court replied, 284 F.2d at 694–695:

Apparently, plaintiff believes that his bureaucratic superior denied him the opportunity to make a personal appeal when he delegated to a subordinate the task of hearing plaintiff's oral presentation. We cannot agree. No decision of this court has suggested what form the personal interview at the agency level ought to take, except to indicate that there is no right to an adversary type hearing at this stage. Certainly, anything that the plaintiff might have presented to the Assistant Attorney General he could have presented to his assistant who prepared an extensive memorandum following the interview. It is true

that this delegate did not have the power to hire and fire the plaintiff, but neither did the Assistant Attorney General. He merely made his recommendations to the Deputy Attorney General after having considered, we must presume, any material which plaintiff had presented at the personal interview. We believe that the procedure followed with respect to the agency hearing was in full compliance with the statute. We do not think that the statute guarantees a veteran an interview with any particular official as long as he is given the opportunity to present such appeals as he may wish to make to a superior who has the authority to either recommend or take final action. (Citation omitted.)

▆▆▆ This language could be interpreted as requiring no recommendation authority in the officer charged with actually hearing the reply. This would be consonant with a normal reading of 5 C.F.R. § 752.202(b) only if "hearing" the oral answer need not be in person, but rather could be by transcript of an oral answer made to another individual. If such were the case, in view of the power of the District Director (to whom the transcript was forwarded) to make the final removal decision, appellant's position would be completely without merit. Naturally, such is not the case. Any interpretation of that nature was rejected by the Court of Claims in Ricucci v. United States, 425 F.2d 1252, 192 Ct.Cl. 1 (1970), motion for reconsideration denied, 432 F.2d 453, 193 Ct.Cl. 120 (1970).

*Ricucci* involved the proposed removal of an employee of the Internal Revenue Service. The employee elected an oral reply, which he made to an IRS Special Agent appointed by the District Director. The reply proceeding was evidently similar to that held in our case,[19] and at its conclusion the reply officer stated "Mr. Ricucci's reply and all materials submitted here today will be carefully considered and a decision will be rendered by the District Director." The court noted that there was nothing in the record to indicate that the oral reply officer ever made, or had the power to make, a recommendation.

Looking to a requirement that there be a "significant difference in use and function between an oral reply and a written reply"—else why provision for both—the *Ricucci* court, in reversing the Commission, held that the employee was "entitled to a general give and take discussion of the case, which the appointment of an investigator[20] as 'oral reply officer' seems as if expressly designed to negate." 425 F.2d at 1254–1255. The court noted that it must be the oral reply officer himself who has the power to recommend or finally act on the proposed disposition. That officer should additionally be a member of the class of "those who would so recommend in the regular course of their duties, whether of a line or staff nature." 425 F.2d at 1255. The court concluded:

Taking the Regulation and Manual together, in summary, we read them as written for the protection of employees, and meaning that . . . the accused employee may have an opportunity to discuss his case with an official of his agency. Not only may he state anything he pleases, from the number of mouths he has to feed to the alleged bias of his immediate supervisor, but he may expect help in presenting his case in form of such

---

19. *See* footnote 13 *supra.*

20. The oral reply officer in *Ricucci* was a member of the IRS Intelligence Division. "That Division we understand investigates taxpayer frauds and is organizationally separate both from plaintiff's part of the Agency and from the Inspection Service which investigates employee misconduct." 425 F.2d at 1253.

The *Ricucci* court limited Paterson v. United States, 319 F.2d 882, 162 Ct.Cl. 675 (1963), to a situation where the "investigator" had developed facts to substantiate the charges involved in the same adverse action in which he was called to hear the oral reply. We agree.

comments from the other side as would be natural from a person knowledgeable about the case and expecting largely to influence its resolution. Courts could hardly measure out the exact amount of loquacity he could demand, but at least they can discourage choice of an agency representative professionally trained to disclose nothing. Further, he has a right to expect that the "oral reply officer" will be one whose recommendation would be meaningful, not an empty formality. 425 F.2d at 1255–1256.

■ We reserve judgment on the extensive standards established by the Court of Claims. At a minimum, however, we agree that the purpose of an oral reply as expostulated by the *Ricucci* court would be thwarted absent a power of meaningful recommendation of disposition vested in the individual who personally meets with the employee.[21] Unfortunately, the record before us is barren concerning the powers of the oral reply officer.[22] We would be dealing in conjecture and perhaps self-deception were we to attempt to glean from the record the compliance, or noncompliance, with the statutory procedural requirement of a meaningful oral reply. The ultimate question governing disposition of the entire matter thus becomes "On whose shoulders must rest the burden of our lack of information?" If the appellees', then at a minimum remand to

the district court with instructions to remand to the Commission for further hearings is required; if the appellant's, affirmance of the district court is required.

Throughout the proceedings, from his first letter to the Regional Commissioner to his final appeal to the Commission, appellant has complained of various procedural deficiencies in his removal. Nowhere, however, not even in the district court below, did he raise a specific challenge regarding the qualifications of the oral reply officer. It is thus for the *first time* on *this* appeal that appellant circuitously draws attention to this possible procedural defect.

We could merely repeat again the oft repeated hornbook phrase that appellate courts will not sit in review to correct errors never claimed at the agency level, except where necessary to avoid unfairness or injustice, and thus mercifully bring to an end this somewhat lengthy discourse. Our perturbation and frustration at the failure to raise the issue below, which failure results in the absence of a meaningful record on which to judge the merits of an important question, forces us to indulge on the reader's patience for a moment longer.

In Connelly v. Nitze, 130 U.S.App.D.C. 351, 401 F.2d 416 (1968), the appellant for the first time in the district court alleged a procedural error which we found to be of convincing merit. Not-

---

21. The purpose of the oral reply, which *Ricucci* so correctly discussed, has long been misunderstood. An example of the misunderstanding can be seen in the Government's oral argument in this case, a portion of which follows:

> (Assistant United States Attorney):
> Perhaps this oral reply officer is not even the person to recommend whether there should be a suspension or removal, that doesn't appear in the record, but he does submit to his superior a report of that oral reply hearing and in this case on the basis of that report the District Director made a recommendation, and the Regional Commissioner, as I understand it, made a determination. So it, perhaps, and I'm not sure the record is clear on this, the oral

> reply officer merely transmits anything that is submitted to him, because that's the purpose of the oral reply hearing —for the man who they are considering taking adverse action against to come in and say "Well I deny it" or "Here's some material for you to consider" or "Here's a statement I want to make." So that that can be considered before the adverse action is taken, and the wheels are begun to move from which there then is given the right of a hearing, appeals, and so on.

22. We reject appellant's contention in his Reply Brief that the transcript of the oral reply hearing shows that the hearing officer had neither the authority to make nor recommend a final decision. *See* footnote 13 *supra*.

ing the inadequacy of the "legal advice" that the appellant had received regarding his procedural rights, the "less than searching presentation on his behalf made by the union to the Commission," and the irresponsible action on the part of the agency, we overlooked the untimeliness of the challenge and reversed the district court. Similar action is not the rule but the exception. Finding here none of the factors considered persuasive in *Connelly,* we decline to remand for further hearings.

In Goldwasser v. Brown, 135 U.S. App.D.C. 222, 417 F.2d 1169 (1969), cert. denied, 397 U.S. 922, 90 S.Ct. 918, 25 L.Ed.2d 103 (1970), we were faced with a similar untimely claim going to the standard utilized by the "Appeals Examiner" in reaching his decision regarding the appellant's adverse action appeal. We declined to consider the issue, stating in language appropriate to this case:

> We think that this contention comes far too late to warrant its being made the occasion for *judicial* invalidation of *administrative* proceedings. The issue is one peculiarly appropriate for bringing to the attention of the administrative tribunal in the first instance in order that it may have the opportunity to consider, and to dispel if necessary, any infirmities which cause litigants before it to doubt the essential fairness of the hearing.

417 F.2d at 1174–1175.

▆ Ample opportunity was given to the appellant to raise the existence of procedural defects in the proper forum, at the agency and Commission levels, so that evidentiary hearings and a thorough sounding of the matter could be initiated. Appellant did raise several specific challenges, notably those relating to delay, cross-examination, and substantiality, but until now any infirmities in the powers of the oral reply hearing officer have not even been hinted. The boilerplate language of challenge to all

procedures is not the minimum specification of issues we deem necessary.

The fluctuating state of the law could excuse a misdirected challenge to the authority of the oral reply officer, but not the absence of a challenge altogether. Litigation must end somewhere. In this scheme of judicial review that somewhere (as to the issues to be considered on appeal) is the Commission. "Great is the art of beginning, but greater the art is of ending." [23] Finding no good reason to divert from the general rule the opinion of the district court is

Affirmed.

---

23. H. Longfellow, *Elegiac Verse,* stanza 14 (1881).